133 So.2d 772 (1961)
Oliver H. CULBERTSON et ux., Appellants,
v.
Herbert T. MONTANBAULT et ux., Appellees.
No. 2210.
District Court of Appeal of Florida. Second District.
November 1, 1961.
Ed W. Harris, St. Petersburg, for appellants.
Raymond Sheldon, Tampa, for appellees.
SMITH, Judge.
This is an appeal from a final decree quieting title to certain lands declaring the plaintiffs, Herbert T. Montanbault and Bessie M. Montanbault, his wife, who are the appellees here, the owners in fee simple of a 20-acre parcel of land, free and clear of any and all right, claim, or demand of the defendants, Oliver H. Culbertson and *773 Emma C. Culbertson, his wife, the appellants here. In their complaint, the complainants deraign their title as follows:
(a) B.F. Leonard, being the owner of the parcel, conveyed the same to Frank Lette and Lizzie Lette, his wife, by warranty deed dated July 26, 1921, and recorded September 26, 1921:
(b) Lizzie Lette subsequently died;
(c) Frank Lette conveyed the property to complainants by warranty deed dated April 9, 1959, and recorded the next day.
The complaint then alleges that there appears of record the following conveyances which casts a cloud upon plaintiffs' title as follows:
(a) John U. Hemmi and wife conveyed the parcel by warranty deed recorded August 1, 1921, to Oliver Culbertson.
(b) W.H. Gill and wife conveyed the parcel by warranty deed recorded May 12, 1926, to Oliver Culbertson.
(c) Albert Culbertson conveyed the parcel by warranty deed recorded November 4, 1927, to Oliver H. Culbertson.
(d) That the above-mentioned Oliver Culbertson and Oliver H. Culbertson is the same person and is one of the defendants. The complaint further alleged that the complainants were in possession of the parcel of land.
The defendants answered admitting that all of the deeds had been recorded as alleged in the complaint and further affirmatively alleged that a complete search of the records disclosed that B.F. Leonard, who purports to have executed a deed to Lette, had never at any time owned or had any claim of title to the land and that his deed was a "wild deed". The answer further denied complainants possession and affirmatively alleged their possession of the land since 1921 and that no adversity had ever been noted against them until complainants attempted to claim title in the year 1959. The answer prayed for affirmative relief and that the complainants be barred from claiming any interest in the land.
From the allegations of the complaint and the admissions of the answer, it was established that the defendant had a prior record title. Testimony was then taken by deposition before the court. There was little, if any, material variance in the evidence given by the witnesses. In brief, Frank Lette testified by deposition as a witness for complainants that he lived on the property which he deeded to Montanbault; that he bought it from Leonard in 1921; built a bungalow on it; lived there from 1921 to 1926; and that no one questioned his ownership of the property, and he paid taxes on it every year until he sold it. It should be noted that his testimony is completely silent on the question of possession subsequent to 1926.
Mr. Montanbault testified to the effect that he looked at the property in 1959, bought it from Lette, recorded the deed and in January, 1960, fenced the south and west sides tying his fencing into the existing fence on the north and east sides. The above testimony, plus documentary evidence of the deeds and payment of taxes, constituted all of the testimony of the complainants.
Mabel M. Gill testified as a witness for the defendant, by deposition, to the effect that there were three parties who had interest in the parcel of land in 1921, and that by the deed recorded August 1, 1921, Hemmi conveyed his interest to Oliver H. Culbertson; that by the deed recorded May 12, 1926, she and her husband conveyed their interest to Culbertson; and that by the deed dated November 4, 1927, Albert Culbertson conveyed his interest to Oliver H. Culbertson. She testified that she and her husband bought the property in question and between 1914 and 1917 they put a fence around it and other adjoining property which they owned, all totaling approximately 200 acres; that they moved onto the property in 1917; that they maintained this fence around the entire parcel, *774 except for five acres which they sold to George Goins; that she knew B.F. Leonard and knew that he lived on up the road from this property and not on the property which she owned and had under fence; that she knew Frank Lette and knew that he lived in the area somewhere, she couldn't remember just where, but it was not inside the area that was fenced; that after they sold their interest, she looked after the property for years for Mr. Culbertson; that for years Joe Baughs lived on the property and then, acting for Mr. Culbertson, she leased the land to J.D. Poole in 1943 or 1944; and that Mr. Poole maintained the fences and grazed cattle and horses on the land up to the present time. The 20-acre parcel in controversy here was a part of the approximately 200 acre parcel and was within the fence and was so used and possessed without any question from anyone until 1960. J.D. Poole testified as a witness for the defendants to the effect that he had been pasturing the approximately 200 acres since 1943 or 1944; that he was put in possession by Mrs. Gill, acting for the defendant Culbertson; that he had kept and maintained the fence around the entire parcel; and that no one had questioned him about his possession or ownership of the property until 1960, when Mr. Montanbault fenced out the 20-acre parcel after Mr. Montanbault advised Poole that he had purchased the land.
Construing all of the evidence most favorable to the complainants, it shows only his chain of title from Leonard to Lette to Montanbault. It shows possession by Lette from 1921 to 1926 and payment of taxes.
The law is clear that, he who comes into equity to get rid of a legal title as a cloud upon his own must show clearly the validity of his own title and the invalidity of his opponent's. Equity will not act in the event of a doubtful title. To succeed a party must do so on the strength of his own title. Norton v. Jones, 1922, 83 Fla. 81, 90 So. 854. To base a title on adverse possession, he must show that such adverse possession has been continued, consecutive, and unbroken for the statutory period. Gould v. Carr, 1894, 33 Fla. 523, 15 So. 259, 24 L.R.A. 130, and the facts establishing the adverse possession must be to a higher degree of certainty, clarity and positiveness, Squires v. Rispler, Fla. 1953, 69 So.2d 177, and continuity is the very essence of the doctrine. Horton v. Smith-Richardson Inv. Co., 1921, 81 Fla. 255, 87 So. 905. While evidence of the payment of taxes is admissible as one of the circumstances tending to determine the fact and extent of possession, the payment of taxes alone is not sufficient in itself to establish adverse possession. McKinnon v. Johnson, 1910, 59 Fla. 332, 52 So. 288.
The record in this cause reveals that the complainants failed to meet the requirements of law to establish their title. The record further shows that much of the testimony on behalf of the defendants contained no identification of the parcel here in question with respect to its legal description, and their witnesses continually refer to such matters as "up here", "over there", "up the road", or "down the road", or pointing and referring to maps without the record disclosing any identification of the points referred to, all to the extent that the defendants testimony failed to meet the requirements of law to establish their title. The final decree is reversed with directions to permit the parties to offer further evidence in order that each of the parties may have the opportunity to establish the validity of the title which he claims with certainty, clarity and positiveness.
Reversed.
KANNER, Acting C.J., and WHITE, J., concur.