394 So.2d 492 (1981)
Orville R. BRISCOE, Appellant,
v.
FLORIDA NATIONAL BANK OF MIAMI, and Henry King Stanford, As Personal Representatives of the Estate of John J. Koubek, Deceased, Appellees.
No. 80-1048.
District Court of Appeal of Florida, Third District.
February 17, 1981.
Rehearing Denied March 20, 1981.
Ezzo, Garel & Saylor and Bruce A. Saylor, Miami, for appellant.
Paige & Catlin and Kyle R. Saxon, Miami, for appellees.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
NESBITT, Judge.
This appeal involves a contest concerning ownership of a joint checking account. The trial court directed a verdict in favor of the co-personal representatives, Florida National Bank of Miami (the bank) and Stanford, at the close of all the evidence after a jury trial. The effect of the directed verdict was to determine that the joint checking account between the appellant, Briscoe, and co-personal representatives' decedent, John J. Koubek, was the product of undue influence. Briscoe contends that it was error to direct the verdict as well as to exclude his *493 testimony as being protected under the "deadman's" statute, Section 90.05, Florida Statutes (1975).[1] We agree with the appellant and reverse and remand for new trial.
John J. Koubek was a benefactor of the University of Miami. It was known for some years prior to his death that a trust in favor of the University of Miami of approximately $1,500,000 had been established by the provisions of Mr. Koubek's last will and testament. Briscoe, an executive in the administrative department of the University, was assigned to and did befriend and assist the aging benefactor. Ultimately, Briscoe moved into Mr. Koubek's home as companion and helpmate. In return, he received room and board gratis. As the infirmities of age overtook the decedent in his ninety-eighth year, he allegedly requested Briscoe to become the joint signator of his checking account on deposit with the appellee bank. Briscoe communicated the decedent's request to the bank. The bank departed from its usual practice, of requiring the personal presence of the owner of an account when the joint signature cards are executed, because the bank was familiar with both Briscoe and the decedent. Instead, they accepted signature cards and Mr. Koubek's signed letter of authorization to change the account to a joint account with right of survivorship. The bank honored checks drawn against the account solely on Briscoe's signature, both before and after the decedent's death. There was approximately $90,000 in the account at the time of Mr. Koubek's death. Ultimately, Briscoe demanded the proceeds of the account to which he was presumptively entitled as a gift pursuant to Section 659.291, Florida Statutes (1975).[2]
This action for declaratory relief was then commenced by the decedent's co-personal representatives, alleging that Briscoe had procured the joint account with right of survivorship through undue influence. At trial, testimony recounting the facts recited above was produced by the bank. By joint stipulation, the letter of authorization and the joint signatory card were admitted into evidence. A bank officer also gave testimony showing that the ostensible purpose for changing the account was to enable Briscoe to pay the decedent's bills and assist him with financial matters.
The evidence adduced (of the confidential relationship enjoyed by Briscoe with the decedent and of Briscoe's active procurement of the joint account) created a prima facie case of undue influence. In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971). There was, however, some evidence produced by the bank, perhaps out of turn, tending to show a reasonable explanation regarding Briscoe's participation in the private affairs of the decedent which was sufficient to create a jury question. In Re Estate of Carpenter, supra. Moreover, Briscoe's personal testimony regarding the reason for his participation in the decedent's affairs was improperly excluded as being violative of the deadman's statute, Section 90.05, Florida Statutes (1975). Clearly, the introduction of the letter of authorization and the joint signatory card, creating the joint account with right of survivorship, constituted a waiver of the deadman's statute. Sessions v. Summers, 177 So.2d 720 (Fla. 1st DCA 1965); see also, Josephson v. Kuhner, 139 So.2d 440, 443 (Fla. 1st DCA 1962) (setting forth the reasons *494 for the waiver rule). Once there was a waiver of the statute, it constituted a waiver for all purposes. Bordacs v. Kimmel, 139 So.2d 506 (Fla.3d DCA 1962). Consequently, Briscoe's testimony, if otherwise admissible, was erroneously excluded under the deadman's statute.
The directed verdict was improvidently granted because, at the very least, the jury was entitled to weigh the reasonableness of the explanation offered by the bank (as well as that offered by Briscoe) regarding his participation in the private affairs of the decedent, Anheuser-Busch, Inc. v. Campbell, 306 So.2d 198 (Fla. 1st DCA), cert. dismissed, 328 So.2d 840 (Fla. 1975). In Gulle v. Boggs, 174 So.2d 26 (Fla. 1965), Justice Thornal, with his usual clarity, pronounced the effect of a presumption dispelled, as well as the responsibility for its evaluation:
The presumption provides a prima facie case which shifts to the defendant the burden to go forward with the evidence to contradict or rebut the fact presumed. When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, then the impact of "the presumption is dissipated." Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption. At this point the entire matter should be deposited with the trier of the facts to reconcile the conflicts and evaluate the credibility of the witnesses and the weight of the evidence.
174 So.2d at 28-29.
For the foregoing reasons, the final judgment entered upon the directed verdict in favor of the appellees is reversed and remanded for a new trial.
NOTES
[1] The deadman's statute is now incorporated into the Florida Evidence Code in Section 90.602, Florida Statutes (1979).
[2] This statute was renumbered as Section 658.56. § 46, Ch. 80 260, Laws of Fla.

The Legislature has created "convenience" accounts § 658.57 (formerly § 659.292, Fla. Stat. (1979); § 47, Ch. 80-260, Laws of Fla.)] which will obviate the problem created by the instant case because, as its very title suggests, it authorizes the owner to make someone else his agent for the purpose of drawing against his account. The agency, coupled with the interest, does not survive the owner's death. However, a bank is seemingly protected for payments on the account. Funds remaining in a convenience account shall be paid to the guardian of the property of the principal, to the personal representative of the decedent's estate [§ 733.607, Fla. Stat. (1979)], pass by summary administration [§ 735.206, Fla. Stat. (1979)], or by disposition without administration [§ 735.301, Fla. Stat. (1979)].