445 So.2d 597 (1984)
Barry BONIFAY, Appellant,
v.
Robert Edward GARNER, Appellee.
No. AM-226.
District Court of Appeal of Florida, First District.
January 30, 1984.
Rehearing Denied February 24, 1984.
*598 John B. Carr, Pensacola, for appellant.
John P. Welch of Jones & Welch, Pensacola, for appellee.
*599 BOOTH, Judge.
This cause is before us on appeal from final judgment quieting title to land located in Escambia County, which judgment is in pertinent part as follows:
1. That the deed from the developer who originally platted the property herein involved in this action, did convey Block 70, East Pensacola, according to map of J.E. Kauser drawn in 1893, together with any rights that they may have to the riparian rights belonging to any of the foregoing lots or blocks.
2. That Lots 7, 8, 9, 10, 11 and 12 of Block 70 of said subdivision are adjacent to the shoreline of Bayou Texar and the grantees were the recipient of the riparian rights contained in the deed to the property described in Paragraph 1.
... .
4. The description of the property set out in the complaint is a sufficient identification of the property. `A' survey of the property sought to be quieted is attached to and made a part of the complaint. A description is sufficient by which the identity of the land can be established or which furnishes means of identification. A roadway is considered a monument on the ground which is sufficient to identify a boundary.
5. The property owners and their predecessors in title have fenced the property, filled in a portion thereof, cultivated same and exercised dominion thereon for a period of in excess of thirty (30) years, which is indicative of the facts that they were asserting their riparian rights to the property.
This case is the latest in a series of disputes over the ownership of sections of a strip of waterfront property located between Bayou Boulevard and the shoreline of Bayou Texar, a navigable body of water.[1] The lots now owned by appellant Bonifay and appellee Garner were acquired pursuant to the recorded plat of the subdivision of East Pensacola. That plat shows the land in dispute, an unnamed and undesignated strip, as running north and south along the western boundary of the subdivision, between the platted lots and blocks on *600 the east and the meandering shoreline of Bayou Texar on the west. There is no indication on the plat of a road or street on the western boundary of the subdivision, but evidence establishes that in 1908, a wagon trail existed along the undesignated property adjacent to the western boundary of what is now appellee's property. With the passage of time, the wagon trail became more extensively used, until it was finally graded and paved by the county and officially designated as Bayou Boulevard. Neither the earlier wagon road nor the present Bayou Boulevard has ever, apparently, extended all the way to the shoreline, and there remains a strip of land between the water and the road which is referred to herein as the "disputed strip." The disputed strip lies across Bayou Boulevard from the residential lot owned by appellee, is of apparently undefined width, and follows the meandering shoreline.
Appellee Garner brought suit as owner or trustee of residential Lots 7 through 12 in Block 70 of East Pensacola Subdivision, seeking to quiet title in these lots and in the strip of waterfront property located across Bayou Boulevard from the residential lots. Appellee claimed title from a valid chain of title going back to a 1908 deed from East Pensacola City Company to C.H. Turner Construction Company. Alternatively, appellee claimed title to the waterfront property by adverse possession.
Appellant Barry Bonifay, the owner of residential lots in East Pensacola Subdivision, was allowed to intervene, both individually and as a representative of a class consisting of lot owners in the subdivision. Bonifay claims an easement of access to Bayou Texar over the disputed land. This claim of implied easement of access is based upon the conveyance of appellant's subdivision lots with reference to an 1893 map which shows the property in dispute as an undesignated beach or road right-of-way area.
East Pensacola City Company, Inc., a dissolved Florida corporation, C.H. Turner Construction Company, Escambia Realty, and any parties claiming under these entities, were made party to the suit herein, and a brief on their behalf was filed in this court adopting the position of the appellant, Barry Bonifay, herein. The City of Pensacola, also an appellee, filed a supplemental brief.
After a hearing on the matter, the trial court entered a final judgment set out, supra, in pertinent part, holding appellee entitled to quiet title in the residential lots and in the waterfront property. In quieting fee simple title in appellee, the court implicitly rejected appellant's claim of an implied easement over the waterfront property. It is unclear whether the final judgment is based on a finding of conveyance of fee simple title to the disputed waterfront property by the "riparian rights" language of the 1908 deed or on a theory of adverse possession, or on some other basis. Since our duty as an appellate court requires that the judgment below be affirmed if it can be supported on the evidence presented, we have reviewed the briefs and record, propounded supplemental written interrogatories to the parties, had supplemental briefing, oral argument, and reviewed all authorities cited, in an effort to fulfill that obligation.
Two matters are not in dispute here: (1) the ownership of appellee's subdivision lots, and (2) the trial court's holding that there was no public dedication of the undesignated strip, a holding which is not challenged on appeal.[2]
The following issues will be addressed: (1) whether appellee's fee simple title to the waterfront property can be sustained, based on deeds to appellee and his successors referring to "riparian rights;" (2) whether appellee has obtained title to the waterfront property by adverse possession; and (3) whether appellants are entitled to implied easements of access over the disputed property.

*601 Deed Referring to "Riparian Rights"

In 1908, the East Pensacola City Company conveyed blocks and lots in East Pensacola Subdivision to C.H. Turner Construction Company, appellee's predecessor in title, by the following deed:
KNOW ALL MEN BY THESE PRESENTS, that the East Pensacola City Company, Incorporated, for and in consideration of ONE HUNDRED DOLLARS ($100.00) and other valuable consideration ... do bargain, sell, and convey and grant unto the C.H. Turner Company, the following described property, to-wit:
All of Blocks 8, 24, 38, 51, 67, 70, and 74. Also Lots 1 to 5 inclusive, and 17 to 32 inclusive, in Block 16. All of the foregoing lots and blocks being in East Pensacola according to map of J.E. Kauser drawn in 1893.

Grantors hereby convey any right that they may have to the riparian rights belonging to any of the foregoing lots or blocks. (emphasis added)
The judgment below finds that Lots 7 through 12 of Block 7, conveyed by the above-quoted deed, are "adjacent to the shoreline of Bayou Texar," a finding which appears unsupported by any evidence in the record or inference arising therefrom. On the contrary, the subdivision map, by reference to which the property was conveyed, shows that there is a strip of land between the boundaries of Lots 7 through 12 and the shoreline. On this state of the facts, the lots deeded appellant are not adjacent to Bayou Texar and have no riparian rights.
Riparian rights consist of rights of ingress, egress, boating, bathing, and fishing, and are incident to land bordering on navigable waters.[3] A conveyance of property bordering on navigable waters implicitly conveys riparian rights, but the reverse is not true. Thus, a purported conveyance of "riparian rights," independently of the underlying waterfront property, does not by implication or otherwise convey the waterfront property itself. Here, a conveyance of whatever riparian rights the grantors might have in the specified lots, which lots because of their location have no riparian rights, conveys no more than what the grantor has, to-wit: land without riparian rights. Further, the only land described in the 1908 deed is that specifically designated by lots or blocks. There is no description of the waterfront property in dispute.

Adverse Possession
In Florida, title to land may be acquired by adverse possession, either "under color of title," Section 95.16, Florida Statutes, or "without color of title," Section 95.17, Florida Statutes. Meyer v. Law, 287 So.2d 37 (Fla. 1973). There was evidence adduced below which could form the basis of a finding by the trial court that appellee, and his mother, predecessor in title, exercised sufficient dominion and control over the waterfront property by fencing, improving, and maintaining it for the requisite time period, but the question remains as to whether this possession was "under color of title" in conformance with Section 95.16.
One who claims under color of title must base the claim on a written instrument which purports to convey the property. Mitchell v. Moore, 152 Fla. 843, 13 So.2d 314 (Fla. 1943). The written instrument constituting color of title need not be valid or operative, but it must contain a legally sufficient description of the property. If the description is insufficient to identify the land, possession cannot be "under color of title." Further, in Florida, the doctrine of color of title is available *602 only in cases where the instrument purporting to be a conveyance is accepted in good faith and in the honest belief that it vests title in the claimant. Simpson v. Lindgren, 133 So.2d 439 (Fla. 3d DCA 1961). Accordingly, adverse possession under color of title may not be established where the purported title is accepted with knowledge of its invalidity.
As previously stated, the 1908 deed does not purport to describe the waterfront property and is insufficient to convey fee simple title to appellee Garner. Without a description of the disputed land in the deed, the claim of adverse possession under color of title must also fail. Although the 1908 deed purports to convey "riparian rights," it is not contended that such rights can be acquired through adverse possession independently of the waterfront land itself.
Appellee asserts that City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964), involves similar facts and supports his claim of adverse possession. However, the facts in Walker indicate that the trial court could have found adverse possession without color of title by a possession perfected before 1939 and prior to the amendment of Section 95.17, Florida Statutes, which requires that taxes be paid on the property where adverse possession without color of title is claimed.[4] In the instant case, appellee's predecessors in title did not enter into possession of the disputed property until a decade after the 1939 amendment, and, admittedly, did not pay taxes on the subject waterfront property. As a result, any claim of fee simple title based on adverse possession must depend upon satisfaction of the requirements of Section 95.16 governing adverse possession under color of title.
Appellee asserts that the deeds from Ruby Garner to her son in 1961 and to her brother in 1962 clearly identify the lands possessed by appellee and his predecessors in title for the last 30 years and that this fact was recognized by the circuit court in the Lee and Melton cases, cited supra at Footnote 1, wherein title to the waterfront property across Bayou Boulevard from Lots 1 through 6 of Block 70 was quieted.
The 1961 deed to appellee from his mother, Ruby Garner, conveys Lots 10, 11, and 12 in Block 70, referencing the subdivision map and "the riparian rights belonging to the foregoing property." This description is insufficient as a description of waterfront property and, for the reasons previously indicated, will not support a claim of adverse possession under color of title to waterfront property which is not described in the deed.
As to Lots 7, 8, and 9, there is a 1962 deed from appellee's mother, Ruby Garner, predecessor in title, conveying those lots to Jewell E. Lee and Laura Layne Lee, husband and wife, and containing a description of the disputed waterfront property.[5] The grantee of the 1962 deed is *603 the brother of the grantor, and appellant points out that the deed was executed for minimum consideration and that the following day a nearly identical deed containing the same sufficient legal description of the waterfront property was executed from the brother back to appellee's mother. A question is thus presented as to whether there was good faith and an honest belief in the title under Simpson v. Lindgren, supra. This issue, not addressed by the trial court in the judgment below, if resolved favorably to appellee, would allow an award of title based on adverse possession under color of title of that portion of the waterfront property described in the deed.

Implied Easements of Access
Appellant asserts that the trial court erred in failing to find that he, as an owner of a lot in the platted subdivision, had an easement of access over the waterfront property in dispute. In McCorquodale v. Keyton, 63 So.2d 906, 910 (Fla. 1953), the Florida Supreme Court stated the rule that when lots are sold with reference to a recorded subdivision plat, the purchasers acquire by implied covenant a private easement in lands of the grantor other than those specifically deeded, the purpose of the rule being "not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out in the plan indicated."
The evidence presented, including the 1908 deed and referenced subdivision map, would support a finding that appellant, and others similarly situated, have an implied easement of access to the waterfront property west of Bayou Boulevard, unless these private easements have been extinguished by adverse possession, abandonment, non-user, estoppel, or some other basis. See, 20 Fla.Jur.2d Easements, Sections 23, 27 through 43, and cases cited therein; 28 C.J.S. Easements, §§ 53, 60, 63. There is a factual question presented in this case as to whether the actions of appellee and his predecessors in title, by fencing of the disputed strip and preventing access, have cut off the implied private easements of other lot owners. The rules governing the extinction of easements, as well as those which govern the acquisition of easements, incorporeal hereditaments, by prescription, differ from those rules which apply, by statute in Florida, to acquisition of title to land by adverse possession.[6]
Thus, the trial court's implicit denial of the claim of private easements for owners of other lots, if not sustainable on the title by deed or adverse possession theories, may be sustainable on other grounds. Ownership of the fee of the disputed strip is not required in order for one to establish, *604 under the doctrine of prescription, the right to maintain a fence and dock such as were apparently maintained here for more than the prescriptive period. The record below and the trial court's determination of these questions is not clear.
In summary, we hold that appellee has failed to establish title to the disputed strip by deed or by adverse possession, but preserve for the trial court's express finding possible adverse possession with color of title as to Lots 7, 8, and 9 under the 1962 deed which describes a portion of the disputed strip. The trial court's implicit ruling that lot owners in the subdivision had no easement of access over the disputed strip may be sustainable but requires findings by the court which recognize the implied private easements and determine that they have been extinguished.
Accordingly, the judgment below is reversed and the cause remanded for further proceedings consistent herewith, including the taking of such further evidence, if any, as the court may require in order to expressly determine the issues remaining.
WIGGINTON and NIMMONS, JJ., concur.
NOTES
[1] The parties have brought to our attention several earlier cases, reported and unreported, dealing with land situated between Bayou Boulevard and Bayou Texar, and involving some of the issues presented in this appeal:

(1) Whether the 1908 deed, referencing the 1893 map, supports an implied easement of access to the waterfront property on behalf of the subdivision lot owners.
Morain v. Herwig (unreported), Case No. 42,189 (Circuit Court for Escambia County, March 2, 1962), in which a mandatory injunction was granted directing the defendants to remove all fences and other obstructions erected on waterfront property lying across Bayou Boulevard from the lots owned by them and enjoining the defendants from exercising any acts of ownership on the property. (This case was not appealed.)
Muller v. Bainter, Case No. 81-170 (Circuit Court for Escambia County, November 24, 1981), affirmed per curiam by this court in Bainter v. Muller, 419 So.2d 1202 (Fla. 1st DCA 1982), in which plaintiff lot owners were found to have an easement for ingress and egress to Bayou Texar over the waterfront property across Bayou Boulevard from Block 81.
(2) Whether the strip of land in question was offered for dedication to the public through the recording of the plat and accepted by the public through use over a long period of time, thereby precluding a subsequent claim of adverse possession.
City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964), wherein this court approved the trial court's finding that the evidence affirmatively established a lack of acceptance of dedication by the public, except as to the right-of-way of Bayou Boulevard, so that adverse possession by the Walkers was not precluded.
(3) Whether title to the disputed waterfront property had been perfected under a claim of adverse possession.
City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964), wherein this court held evidence in the record supported the trial court's finding that the Walkers had perfected title by adverse possession of the property by open, notorious, and continuous possession under a claim of right since 1908.
Lee v. East Pensacola City Company and Melton v. East Pensacola City Company, Cases No. 79-1076 and 79-1077 (Circuit Court for Escambia County, October 23, 1980) (unreported), in which title was quieted from the waterfront property located across Bayou Boulevard from Lots 1 through 6 of Block 70 in the owners of those lots. (The final judgment did not discuss the basis for plaintiffs' claims of title. This case was not appealed.)
[2] City of Pensacola v. Walker, 167 So.2d 634 (Fla. 1st DCA 1964), involving the same undesignated strip, affirmed finding of no public dedication except as to the right-of-way of Bayou Boulevard.
[3] Section 197.228, Florida Statutes, defines riparian rights, in part, as follows:

(1) Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing and fishing and such others as may be or have been defined by law. .. . The land to which the owner holds title must extend to the ordinary high water mark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
[4] City of Pensacola v. Walker, 167 So.2d 634, 635 (Fla. 1st DCA 1964):

The plat [of East Pensacola Heights] reflects an unnamed and undesignated strip of land running north and south along the western boundary of the subdivision between the platted lots and blocks on the east, and the meandering shoreline of Bayou Texar on the west. Appellees' predecessors pioneered the settlement of this subdivision, having purchased their property and built their home there in the early months of 1908. ...
The chancellor found from the evidence that shortly after they built their home and moved upon the lots purchased by them, appellees' predecessors in title went into possession of that part of the disputed strip of land lying between their property and the bayou, filled in swampy areas of it and constructed thereon valuable improvements. It was further found that possession of the disputed land by appellees and their predecessors had been open, notorious and continuous for a period of more than fifty years under a claim of right, thereby ripening into a valid fee simple title. We find competent substantial evidence in the record to support these findings. (emphasis added)
[5] Deed from Ruby Garner to Jewel E. Lee and Lorraine Lee (1962) (only Lots 7, 8, and 9 are involved in this suit):

Lots 1, 2, 3, 4, 5, 6, 7, 8, and 9 in Block 70, East Pensacola, as per plat of same as drawn by J.E. Kauser in 1893. The grantor hereby conveys the riparian rights belonging to the above numbered lots which is shown by that certain deed from the East Pensacola City Co., Inc., dated October 1, 1908 and recorded in Deed Book 55 at page 79, of the Public Records of Escambia County, Florida.
This conveyance is intended to include the improvements on the waterfront of this property such as a pier and the fence and the concrete walks thereon, and also the following described property to wit: Commencing at the Northeast corner of Block 70, East Pensacola Heights, thence West along the North line of said Block an extension thereof 380.65 feet to Bayou Texar for point of beginning, thence East over line last traversed 59 feet to Bayou Boulevard, thence South 6 [degrees] 40 [minutes] West 164.09 feet, thence South 16 [degrees] 37 [minutes] West 143 feet to the South line of said Block extended, thence West 82.15 feet to said Bayou Texar thence Northerly with said Bayou to point of beginning, less that portion of the above described property lying across Bayou Boulevard and due West of lots 10, 11, & 12, heretofore deeded by the grantor herein, including the riparian rights to the latter described property being conveyed.
[6] See, e.g., Florida Power Corp. v. McNeely, 125 So.2d 311, 320 (Fla. 2d DCA 1960):

The third point here argued advances the query whether the proviso of section 95.18 is applicable to an easement. This proviso specifies a condition relating to the return for taxation and payment of taxes on the land possessed by the adverse claimant. It is one of the requirements which must be met in order to acquire title without color of title so that it is applicable to the acquisition of title through adverse possession. It does not concern the acquisition of an easement, but neither does the time period apply as prescribed by that statute for adverse possession.