469 So.2d 874 (1985)
Thelma Jean Ulery KUNCE and Ruth F. Ulery Whitaker, Appellants,
v.
Duane H. ROBINSON, As Trustee, Appellee.
No. 84-2185.
District Court of Appeal of Florida, Third District.
May 14, 1985.
Rehearing Denied June 17, 1985.
*875 Don R. Livingstone, South Miami, for appellants.
Alfred J. Anton, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
On June 24, 1980, Ruth Freda Ulery executed an instrument creating an entirely revocable inter vivos, so-called "living," trust, into which she placed essentially all her real and personal property. Her nephew Duane H. Robinson was named trustee. The purposes of the trust were stated to be for the benefit of the grantor during her lifetime and then for her children and grandchildren.[1] Accordingly, the key provision, which set forth the beneficiaries, provided:
Management and Distribution of Income and Principal of the Trust
A. During the lifetime of the Grantor, the Trustee shall manage the trust property and shall make distributions of income and principal in accord with the provisions of this Trust for the benefit of the Grantor. After Grantor's death, the Trustee shall manage the trust property and shall make distributions of income and principal in accord with the provisions of this Trust for the benefit of Grantor's children and the natural born children of Grantor's children.
B. After the death of the Grantor, the Trustee may make distributions of income or principal, or both, to or for the benefit of Grantor's children or the natural born children of Grantor's children or both, from time to time and in such amounts as the Trustee, in his sole and exclusive discretion deems necessary or desirable for their health, education, comfort, and general welfare, taking into consideration the standard of living to which they are accustomed at the time of Grantor's death.
On July 31, 1981, when Mrs. Ulery was hospitalized with cancer, she executed the trust instrument which is in issue here. The trust (Trust II) was funded with the identical property which had been contained in, but which was thereby constructively removed from the 1980 trust,[2] as its terms permitted. Robinson, who was entirely responsible for the preparation and execution of the new instrument, was again the trustee. Of more significance, since the witnesses to the trust and Mrs. Ulery's *876 relatives uniformly stated, although it was technically unnecessary because of the terms of the first trust,[3] that the settlor's sole reason for establishing Trust II was to acknowledge a recently-born grandchild, her intentions to benefit her children and grandchildren were restated in almost identical language.[4],[5] The dispositive beneficiary provision, however, contained a drastically different addition. It stated:

Management and Distribution of Income And Principal of the Trust
A. During the lifetime of the Grantor, the Trustee shall manage the trust property and shall make distributions of income and principal in accord with the provisions of this Trust for the benefit of the Grantor. After Grantor's death, the Trustee shall manage the trust property and shall make distributions of income and principal in accord with the provisions of this Trust for the benefit of Grantor's children and the natural born children of Grantor's children, and others as the Trustee in his discretion may deem appropriate.

B. After the death of the Grantor, the Trustee may make distributions of income or principal, or both, to or for the benefit of Grantor's children or the natural born children of Grantor's children, or both, from time to time and in such amounts as the Trustee, in his sole and exclusive discretion deems necessary or desirable for their health, education, comfort, and general welfare, taking into consideration the standard of living to which they are accustomed at the time of Grantor's death. [emphasis supplied]
Mrs. Ulery died on June 17, 1982. In the wake of subsequent disputes concerning the administration of the trust assets, notably a home where one of them lived, between her two daughters and Robinson, they brought the instant action to cancel Trust II on the grounds (a) that it had been the product of his undue influence and (b) that it was unenforceably indefinite. After a non-jury trial, the court entered judgment for Robinson and the daughters have taken this appeal. We strike the clause of the trust which we find rendered it impermissibly vague, but otherwise affirm.

I
We first find no error in the trial judge's rejection of the claim of undue influence. We agree that Robinson's conduct in procuring the 1981 trust document fulfilled virtually every one of the elements of procurement outlined in In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), thus giving rise, in the light of the confidential relationship he bore to her as her nephew and trustee, to a presumption of undue influence. We likewise do not recommend that an attorney, as did the one involved in this case, draft a dispositive instrument on instructions solely from an interested intermediary without ever seeing or speaking to the settlor or testator whose property is involved. Nonetheless, since there is substantial evidence to support it, we cannot interfere with the finding that, even considering *877 these factors, the 1981 trust was the product of Mrs. Ulery's own unimpeded will. In re Estate of Carpenter, supra; Briscoe v. Florida National Bank of Miami, 394 So.2d 492 (Fla. 3d DCA 1981); Laufer v. Norma Fashions, Inc., 418 So.2d 437 (Fla. 3d DCA 1982).

II
We cannot, however, similarly agree with the conclusion that, as drafted, the 1981 trust may be permitted to stand. To the contrary, it is clear that that portion of the designation of beneficiaries which permits the trustee to make distributions to such "others as the Trustee in his discretion may deem appropriate" does not identify any particular entity, person or class, the members of which can enforce the trust. It must therefore be deemed void for indefiniteness. In re Estate of Kradwell, 44 Wis.2d 40, 170 N.W.2d 773 (1969) ("legacy in trust for heirs, legatees, and such other persons [executrix] may deem deserving and for benevolent objects" void); Moskowitz v. Federman, 72 Ohio App. 149, 51 N.E.2d 48 (1943); In re Dormer's Estate, 348 Pa. 356, 35 A.2d 299 (1944); Fitzsimmons v. Harmon, 108 Me. 456, 81 A. 667 (1911); G. Bogert, Trusts and Trustees, §§ 161 n. 16, 162 n. 57 (rev. 2d ed. 1979); 2 A. Scott, The Law of Trusts § 122 (1967); 1 Restatement (Second) of Trusts § 122 (1959); see Estate of Stewart v. Caldwell, 271 So.2d 754 (Fla. 1973); Railey v. Skaggs, 220 So.2d 689 (Fla. 3d DCA 1969).
While this determination is virtually self-evident, what should legally follow from it is not nearly so clear. In several cases, indefiniteness in the dispositive provision of an instrument has been held to invalidate the entire trust it purports to create.[6]In re Estate of Kradwell, supra. On the other hand, there is well-reasoned authority to the effect that, when the result is compatible with the settlor's general intent, an invalidly uncertain provision should be severed from an accompanying enforceable one[7] so that the remaining provision, and the trust as a whole, may be preserved. We adopt that course here.
The general principles which favor the severability of void from valid trust provisions, see e.g. 2 A. Scott, supra at §§ 123, 398.1, and thus the vindication of the settlor's intent, which is the touchstone of our concern in these cases, were applied to a situation very much like this one in Armington v. Meyer, 103 R.I. 211, 236 A.2d 450 (1967). There, the court dealt with a trust provision which provided for distribution to (a) the trustees and designated relatives and (b) "for any and all men and women among my employees and acquaintances known to my said trustees to have been loyal to me in my inventions during the hard, up-hill struggle to establish my Wardwell Braiding Machine business." 236 A.2d at 453. The court held that the attempted disposition to "employees and acquaintances" was invalid for uncertainty, but that it was separable from the gift, which it deemed valid, to the specified trustees and relations. The court held:
The grantor's intent at the time of the execution of the trust instrument is controlling on the question of whether one grant is severable from another. Bateson v. Bateson, 294 Mich. 426, 293 N.W. 705. The general rule favors severability. *878 As the court said in Bristol v. Bristol, 53 Conn. 242, 257, 5 A. 687, 692:
"But the principle to be applied is well settled, that where a trust is for several purposes, some valid and some invalid, it will be supported so far as it is good, provided such part is separable from the rest, and no violence will thereby be done to the testator's general intent."
See also 1 Restatement, Trusts 2d, § 65 at 176, where it is stated:
"If a provision in the terms of the trust is illegal, the trust fails altogether if, but only if, the illegal provision cannot be separated from the other provisions without defeating the purpose of the settlor in creating the trust."
If the discretionary gift of income to "aforesaid persons" is not severable and the entire clause is invalidated, the income must either be accumulated for ultimate disposition to the charitable remainder or revert to the testator's estate and pass by intestacy. We are of the opinion that the testator did not intend either of these alternatives to be applicable should his grant to "aforesaid persons" or his employees and acquaintances fail.
* * * * * *
[T]he invalid provision is not so inseparably blended with the good one that it cannot be eliminated without destroying the testator's dominant intent.
For the reasons stated we hold that the gift to "aforesaid persons" is severable and valid.
236 A.2d at 455. As is said in 2 A. Scott, supra at § 122 (Supp. 1984) "[t]his result is more nearly in accordance with the testator's intent than to hold that the whole disposition fails." See also citation of Armington with approval at G. Bogert, supra at § 161, p. 129. We both agree with the wisdom of this conclusion and find it directly applicable to the case at bar.
Striking the trustee-discretion clause from the beneficiary provision leaves one for the distribution, within the discretion of the trustee, of the principal and income to the grantor's children and grandchildren. There is no doubt of the validity of such a disposition. G. Bogert, supra at § 162 n. 50; Annot, Validity and Construction of Trust Instrument Which Fails to Designate Respective Interests of Beneficiaries, 87 A.L.R.3d 925 (1978). Nor is there any question that the "revised" provision reflects Mrs. Ulery's dominant concern with providing for her children and grandchildren, as uniformly reflected in the specific, identical language in the first, 1980 trust,[8] in all the remaining provisions of the 1981 instrument, and in the unrebutted extrinsic evidence of her wishes as expressed when the document was signed. In these circumstances, we find no reason to invalidate the entire trust, and every reason simply to strike the offending phrase.
Accordingly, upon remand, the phrase "and others as the Trustee in his discretion may deem appropriate" shall be ordered stricken from paragraph A, page 5 of the 1981 trust instrument. The judgment under review is otherwise affirmed.
Affirmed as modified.
NOTES
[1] ONE: PURPOSE OF TRUST
A. Grantor has established this Trust in order to provide a means for the preservation and management of certain real and personal property owned by Grantor, for the management of such further property interests as may be deposited with the Trustee by Grantor, and for the maintenance, comfort, and support of Grantor during Grantor's life, and after Grantor's death, of Grantor's children and the natural born children of Grantor's children, all in the manner hereinafter provided.
B. At the time of execution of this Trust, those persons presently living who are eligible to be beneficiaries under this Trust are as follows:
Her daughter, RUTH F. WHITAKER, age 26 years
Her daughter, THELMA JEAN ULERY, age 25 years
Her grandson, JASON CLAY WHITAKER, age 2 years.
[2] See Panzirer v. Deco Purchasing & Distributing Co., 448 So.2d 1197 (Fla. 5th DCA 1984), and cases cited.
[3] See note 1, supra.
[4] ONE: PURPOSE OF TRUST
A. Grantor has established this Trust in order to provide a means for the preservation and management of certain real and personal property owned by Grantor, for the management of such further property interests as may be deposited with the Trustee by Grantor, and for the maintenance, comfort, and support of Grantor during Grantor's life, and after Grantor's death, of Grantor's children and the natural born children of Grantor's children, all in the manner hereinafter provided.
B. At the time of execution of this Trust, those persons presently living who are eligible to [be] beneficiaries under this Trust are as follows:
Her daughter, RUTH F. WHITAKER, born December 2, 1953;
Her daughter, THELMA JEAN ULERY, born February 10, 1955;
Her grandson, JASON CLAY WHITAKER, born November 14, 1977;
Her granddaughter, JESSICA RUTH WHITAKER, born March 3, 1981
[5] While there were other minor differences, including an increase in the trustee's yearly compensation from $500.00 to $1,500.00, none are of any significance to this controversy.
[6] The consequence of such a holding, as is usually the case when an attempt to create an express trust fails, 56 Fla.Jur.2d Trusts § 89 (1985), is that the designated trustee holds the corpus under a resulting trust in favor of the estate of the settlor. G. Bogert, supra § 161 n. 18, p. 130; 5 A. Scott, supra at § 491, pp. 3256-57; see note 7, infra. (This result would be required here because it is obvious that the grantor indeed intended to create a trust, rather than, as in Axtell v. Coons, 82 Fla. 158, 89 So. 419 (1921) and 1 Restatement (Second) of Trusts at § 125, which have been quite unaccountably cited by the appellants, to make an unrestricted gift to the trustee with the result in this case that Robinson would secure ownership of the property free of trust. Compare cases collected applying each of these principles at 3 Restatement (Second) of Trusts at § 125 (App. 1959).)
[7] Of course, this result is impossible when, unlike this case, there is only a single, unseverable uncertain designation of beneficiaries. E.g., In re Dormer's Estate, supra.
[8] Although only the validity of the 1981 trust is now before us and the parties have not argued the effect of a holding of invalidity upon the disposition of the corpus, we recognize that voiding the entire trust might have the same ultimate effect as our approach by restoring the corpus to the 19 80 trust (which has the same beneficiary provision) either on a theory akin to the doctrine of dependent relative revocation often applied in will cases, 18 Fla.Jur.2d Decedent's Property § 222 (1980), or, as is much more likely under the prevailing law, through the establishment of a resulting trust in favor of Mrs. Ulery's estate. Note 5, supra. This is so because her will, which is in evidence, likewise leaves her property to the 1980 trust. We adopt the severability determination, however, simply because we are convinced that it represents the sounder resolution of the question.