675 So.2d 202 (1996)
L.B. McLEMORE, Grace B. Johnson and Klenton LeGrand McLemore, Appellants,
v.
Penny McLEMORE and Klenton T. McLemore, also known as Klint McLemore, also known as K.T. McLemore, Appellees.
No. 95-504.
District Court of Appeal of Florida, First District.
June 4, 1996.
*203 Douglas W. Gaidry of Law Offices of Ben Watkins, Apalachicola, for Appellants.
Jeffrey P. Whitton, Panama City, for Appellees.
JOANOS, Judge.
This case concerns a quiet title action in which appellants, plaintiffs in the lower tribunal, sought to quiet title to five parcels of property conveyed to McLemore's Trust. The issues presented are whether the trial court erred (1) in declaring McLemore's Trust void for indefiniteness, and (2) in denying the request to quiet title in appellants to certain lands in Gulf County, Florida. We affirm in part and reverse in part.
Appellees, Penny McLemore and Klenton T. McLemore, were named as defendants in the action to quiet title. At the time of the creation of the alleged trust, appellees were married to each other. A final judgment of dissolution of their marriage was entered March 17, 1983.[1]
Appellee Klenton T. McLemore answered the complaint to quiet title, admitting all allegations of the complaint. Appellee Penny McLemore answered, denying all material allegations, and asserting affirmative defenses. Penny McLemore also filed a counterclaim and cross-claim, to quiet title to her of lands described as Parcel I and Parcel III in the Order of Equitable Distribution.[2] Thereafter, appellants were permitted to amend their complaint to add a count claiming title by adverse possession.
The record reflects that Klenton T. McLemore, as settlor of McLemore's Trust, signed two trust agreements on June 15, 1978. One document named four of his children as trust beneficiaries; the other document named all seven of his children as beneficiaries. By deeds dated June 22, 1978, two parcels of Gulf County land were deeded to McLemore's Trust. By deeds dated April 17, 1979, three parcels of Gulf County land were deeded to McLemore's Trust. On December 1, 1989, the trustees executed a corrective deed designed to clarify the ownership of the properties.[3] The corrective deed was filed December 27, 1989.[4]
The original trustees of McLemore's Trust were Klenton T. McLemore, Grace B. Johnson, and Lawrence McLemore.[5] In January 1990, Klenton LeGrand (Lee) McLemore succeeded his father, Klenton T. McLemore, as trustee.[6] Lee McLemore identified the seven-beneficiary trust as the document that was attached to the successor trustee document he signed. He stated that this trust document appeared to be a copy. Lee McLemore did not know whether he had ever been shown the original of the seven-beneficiary trust document, and he had no independent knowledge that the seven-beneficiary document represented the operative *204 trust instrument of the McLemore trust. The trial court admitted the successor trustee document into evidence for the limited purpose of showing that it was attached to the designation of successor trustee and recorded in the public records, but not as proof that it was the operative trust instrument.
The trust property was made up of Homewood Subdivision, Sunnywoods Subdivision, the Dixie Dandy building and parking lot, and the Whitechurch property. Lee McLemore stated that roads were put in and trees were sold from Sunnywoods Subdivision; and Homewood Subdivision was registered as a plat, roads were put in, and lands were surveyed. Lee McLemore further testified that property was sold for development in the name of the trust through contracts for deed; and the trust entered into an agreement with the Dixie Dandy store to pay the property taxes for the trust in lieu of rent.
The attorney who prepared the trust instruments for Klenton McLemore in 1978 testified that he prepared two trust documents on the same day, and Klenton McLemore signed both documents on the same day. The first document listed the names of four of Klenton McLemore's children; the second document listed the names of all seven of Klenton McLemore's children. Trustee Lawrence McLemore testified that the beneficiaries of the trust were Klenton McLemore's three sons by his first wife, his three sons by his second wife, and his one son by his third wife, Penny McLemore. In his deposition, Lawrence McLemore identified the four-beneficiary trust document as the McLemore Trust. In later testimony, Lawrence McLemore stated he mistakenly identified the four-beneficiary document as McLemore's Trust, because he believed he was reading the document with seven beneficiaries. The accountant who had prepared tax returns for the trust since 1978 testified that each year, he prepares seven K1 forms, "because there's seven beneficiaries involved in the Trust."
Appellee Penny McLemore testified that she first learned of the existence of the trust in 1980, when she found the document in her house. At that time, she and Klenton McLemore were in the process of dissolving their marriage. She stated she never discussed the trust with Klenton McLemore, and asserted that she signed the deeds at issue in blank.
At the request of the parties, the trial court took judicial notice of the court file in the divorce case. The transcript of the final hearing in that case reflects that Klenton McLemore identified the original of the four-beneficiary trust as the effective trust instrument. At a subsequent hearing in the dissolution case, Klenton McLemore said the document introduced into evidence at the final hearing of the dissolution proceeding was incorrect, because it did not list the names of all of his children.
The trial court found the trust void for indefiniteness, because the settlor's intent as to which trust document was controlling had not been established, and the trust did not identify with certainty the particular person or class necessary to enforce the trust. The trial court further found the plaintiffs could not hold the property as trustees since the trust was invalid. Having determined the trust to be void, the trial court found it unnecessary to reach the question whether McLemore's Trust was a grantee capable of accepting and holding title. The 1978 and 1979 deeds purported to convey the property at issue to McLemore's Trust, rather than to the trustees as grantees.[7] Since the trial court deemed the trust invalid, the court denied appellants' request to quiet title to the five parcels of real property deeded to the trust. The trial court also denied appellants' adverse possession claim, finding no evidence that Penny McLemore was placed on notice of hostile possession or ouster, and that the acts taken in connection with the property constituted ordinary use in connection with land management. The trial court further ordered that the distribution of property deeded into the trust stood as ordered in the Order of Equitable Distribution entered in 1989.
*205 The essential elements of a trust are: (1) the settlor or grantor, (2) the trustee, (3) the beneficiaries, and (4) an indication of the property conveyed for the purpose of the trust. Reid v. Barry, 93 Fla. 849, 112 So. 846, 854 (1927). "The intent to create a trust must be definite and particular," Watson v. St. Petersburg Bank & Trust Co., 146 So.2d 383, 385 (Fla. 2d DCA 1962), and the beneficiaries of a trust must be clearly ascertainable. That is, the designation of trust beneficiaries must clearly identify a "particular entity, person or class, the members of which can enforce the trust." Kunce v. Robinson, 469 So.2d 874, 877 (Fla. 3d DCA 1985).
If the designation of beneficiaries is deemed too indefinite for enforcement of the provisions of a trust, the usual result is that the trust is void and "the designated trustee holds the corpus under a resulting trust in favor of the estate of the settlor." Kunce, 469 So.2d at 877, n. 6. Where it is compatible with the settlor's intent, it may be possible to sever the uncertain provision from an accompanying enforceable one, "so that the remaining provision, and the trust as a whole, may be preserved." Id.
In Kunce v. Robinson, the settlor executed a revocable "living" trust in June 1980, naming her nephew as trustee. The stated purpose of the trust was to benefit the settlor during her lifetime, and then to benefit the settlor's children and grandchildren. In July 1981, while hospitalized with cancer, the settlor executed a second trust instrument. Witnesses testified the sole reason for the second trust instrument was to acknowledge a recently-born grandchild. The second trust instrument was prepared at the direction of the trustee, and was almost identical to the first, with the exception of one significant different addition. Where the first trust document directed that upon the death of the settlor the trustee "shall make distributions of income and principal ... for the benefit of Grantor's children and the natural born children of Grantor's children," the second trust instrument included language which purported to permit the trustee to dispose of the trust property to "others as the Trustee in his discretion may deem appropriate." 469 So.2d at 876. The court concluded the latter provision was invalid, because it failed to identify any particular entity, person, or class that could enforce the trust. Since severance of the offending phrase would not impair the settlor's dominant concern to provide for her children and grandchildren, the court ordered the offending phrase stricken from the 1981 trust instrument. 469 So.2d at 878.
Unlike the trust instrument at issue in Kunce v. Robinson, this case does not present a severable provision. Rather, the record in this case indicates that Klenton T. McLemore executed two trust instruments on the same day; one instrument named four of his children as beneficiaries, the other instrument named all seven of his children as beneficiaries. At the final hearing in the dissolution of marriage proceeding, Klenton McLemore identified the original of the four-beneficiary trust instrument as the operative trust. The four-beneficiary trust instrument then was made a part of the circuit court records in the dissolution action. At a subsequent hearing in the dissolution action, Klenton McLemore stated the four-beneficiary trust instrument was "not right," because it did not name all of his children. Similarly, in his deposition, Lawrence McLemore, trustee and brother of Klenton McLemore, identified the four-beneficiary trust as the operative instrument. At the hearing in this cause, appellants presented some evidence that accounting procedures conducted in connection with the property have treated the seven-beneficiary trust as the operative trust instrument. The original of the seven-beneficiary trust instrument was not placed in evidence, and no witnesses were presented who could testify concerning the whereabouts of the instrument.
The record suggests that after entry of the Order of Equitable Distribution, appellants recognized the deeds purporting to convey real property to McLemore's Trust were subject to challenge. To remedy the perceived deficiencies in the original deeds of conveyance to McLemore's Trusts, appellants filed a corrective deed with language which related back to the date Klenton *206 McLemore executed the two trust instruments.[8]
We disagree with the trial court's finding that the evidence was insufficient to establish that Klenton McLemore intended to create a trust, but we agree the evidence failed to establish which of the two separate trust instruments accurately identified the intended beneficiaries of the trust. Because the trial court did not reach the question whether McLemore's Trust was an entity capable of accepting and holding title as grantee, we do not determine the effect of such a corrective deed placed on the record after portions of the property were alleged to have been sold through unrecorded contracts for deed. See Golden v. Hayes, 277 So.2d 816, 817 (Fla. 1st DCA 1973). Upon remand, the trial court may receive such evidence as will aid in resolution of the issues of Klenton McLemore's intended beneficiaries, and the effectiveness of the relation back of the corrective deed to the date of the original improper conveyances to McLemore's Trust.
Appellants' adverse possession claim is prefaced with an acknowledgment that a trust cannot take title to a deed. Appellants contend, however, that equity dictates the deeds to McLemore's Trust should be viewed as conveying to the trustees, since the trustees arguably could have been identified through the trust address shown on the face of the deeds. One who seeks to quiet a cloud upon his title must show clearly the validity of his own title, and the invalidity of his opponent's title. Culbertson v. Montanbault, 133 So.2d 772, 774 (Fla. 2d DCA 1961). The record in this case demonstrates that appellants failed to establish the validity of the titles to McLemore's Trust by adverse possession, which allegedly divested Klenton McLemore of title to the subject property before entry of the Order of Equitable Distribution.
Adverse possession under color of title involves a two-step process. First, the property must be described in a written instrument recorded in official county records, and the property must be possessed continuously for seven years. § 95.16(1), Fla.Stat. (1989); Seton v. Swann, 650 So.2d 35, 37 (Fla.1995). The second step is concerned with the methods listed in section 95.16(2), by which a claimant may show the property was possessed adversely.[9] The deed purporting to convey the property must be accepted in good faith and in the honest belief that it vests title in the claimant. Bonifay v. Garner, 445 So.2d 597, 601-602 (Fla. 1st DCA 1984); Steputat and Co., Inc. v. Bidwell, 599 So.2d 762, 763 (Fla. 5th DCA 1992). Proof of adverse possession against a co-tenant or members of a family requires a showing of a clear, positive, and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner for a sufficient length of time to bar the owner from asserting his rights. Adams v. Adams, 512 So.2d 1150, 1152 (Fla. 1st DCA 1987).
To establish adverse possession without color of title, the claimant must show actual, continued, open, and hostile possession of the property for seven years, and payment of all taxes by proper legal description for the statutory period. § 95.18(1), Fla. Stat. (1989); Porter v. Lorene Investment Co., 297 So.2d 622, 624 (Fla. 1st DCA 1974). Subsection (2) of section 95.18 provides that property is deemed possessed only:
(a) When it has been protected by substantial enclosure.
(b) When it has been usually cultivated or improved.
Assuming the validity of, and the conveyances into, the trust instruments here at issue, the record suggests appellants arguably satisfied the initial requirements for adverse possession under color of title. That is, the property was described in written instruments recorded in the official county records; the claimed possession commenced in 1979 and 1980, more than seven years before commencement of Penny McLemore's alleged exclusive possession by virtue of the Order of Equitable Distribution. However, it is not clear that the trust's disavowal or *207 disclaimer of Penny McLemore's right to Parcels 2 and 3 was made clear to her for a sufficient time to bar her claim. The evidence is conflicting as to Penny McLemore's knowledge of the purported trust and her execution of deeds into the trust. In addition, we agree with the trial court that the activities allegedly conducted with regard to Parcels 1, 2, and 3 appear consistent with ordinary land management. The use was not such as would necessarily put Penny McLemore on notice that the property was held adversely to her interest. Similarly, no evidence was presented that Penny McLemore had knowledge that lots had been sold from the subject tracts.
Again assuming, without deciding, the validity of the trust and its conveyances, the record does not support appellants' claim to title by adverse possession without color of title, particularly with regard to Parcel 3, the Sunnywood parcel. Appellants did not present evidence of improvements or a substantial enclosure as required by section 95.18(2), Florida Statutes, and returns for taxes for Parcel 3 were made in the names of Klenton and Penny McLemore, not McLemore's Trust or trustees of McLemore's Trust.
Accordingly, we affirm the final judgment with respect to the trial court's determination that appellants failed to establish their claim of title by way of adverse possession, and denial of appellants' complaint to quiet title to five parcels of real property located in Gulf County. We further affirm the trial court's finding that appellants failed to establish the settlor's intent as to which trust document is the operative instrument, but we reverse that portion of the final judgment which determined that the evidence failed to establish the settlor intended to create a trust. This cause is reversed in part, and remanded with directions to conduct such further proceedings as are necessary to determine the operative trust instrument, and whether the second trust instrument was intended to modify the first. Upon remand, the trial court may conduct such further proceedings as the court deems necessary to determine the efficacy of the corrective deed to remedy the deficiencies of the initial deeds of conveyance to the trust.
BOOTH, J., concurs.
BENTON, J., concurs in part and dissents in part with written opinion.
BENTON, Judge, concurring in part and dissenting in part.
In the majority's view, the evidence sufficed "to establish that Klenton McLemore intended to create a trust, but ... failed to establish which of the two separate trust instruments accurately identified the intended beneficiaries of the trust." Ante, at 206. I agree that the appellants proved a trust but I also believe the weight of the evidence established that the later-executed seven-beneficiary versionthe instrument which has dictated the accounting treatment and governed distributions since the day the trust came into beinggave effect to the settlor's intent.
Real estate comprising the trust corpus was the subject of the trustees' suit to quiet title. The trial court ruled that the attempt to create a trust failed, and found no reason to decide any claim of title predicated on possession adverse to the trust's. It declined to quiet title to any property in a trust it deemed a nonentity. Because we conclude that a trust was created, the trial court must, on remand, address the adverse possession claim. I would leave the claim of adverse possession to the trial court in the first instance, however.
NOTES
[1] Litigation generated by the dissolution of marriage proceeding was the subject of three previous appeals. A portion of the property at issue in this quiet title action was awarded to Penny McLemore in an Order of Equitable Distribution entered in 1989.
[2] Parcels I and III, as listed in the equitable distribution order, contain descriptions of the real property described in Parcels 2 and 3 of appellants' complaint to quiet title.
[3] The corrective deed changed the grantee designation from McLemore's Trust to the trustees of McLemore's Trust, and included a statement that the correction was made "ACCORDING TO THE INTENTION OF THE PARTIES AT THE TIME OF THE ORIGINAL GRANT FROM THE GRANTORS TO THE McLEMORES' TRUST AND/OR THE McLEMORES' TRUST OF 6-15-78."
[4] The Order of Equitable Distribution was entered December 20, 1989, and was filed in the Clerk's office on January 7, 1990.
[5] Grace Johnson is Klenton McLemore's mother; Lawrence McLemore is Klenton McLemore's brother.
[6] Lee McLemore also is named as one of the beneficiaries of the trust.
[7] A deed from an owner of real property to a non-existent entity is a nullity. Daniels v. Berry, 513 So.2d 250, 251 (Fla. 5th DCA 1987). In 1989, the trustees executed and recorded corrective warranty deeds with respect to each parcel in an effort to remedy this defect.
[8] The corrective deed was filed seven days after entry of the Order of Equitable Distribution.
[9] Appellants in this case predicated their adverse possession claim under color of title on section 95.16(2)(c), Fla.Stat., which states that "property is deemed possessed ... [w]hen, ... it has been used ... for the ordinary use of the occupant."