876 So.2d 609 (2004)
Stephen G. DAVIS, Stephen G. Davis, Jr. and Beth-Anne Davis, Appellants,
v.
Raymond REX, Jr., as Trustee of the Virginia F. Davis Irrevocable Trust dated March 4, 1986, Richard A. Popp, as Personal Representative of the Estate of Scott F. Davis, Pittsburg State University Foundation, Inc. and WPBT Communications Foundation, Inc., Appellees.
No. 4D03-2488.
District Court of Appeal of Florida, Fourth District.
June 16, 2004.
*610 James G. Pressly, Jr. of Pressly & Pressly, West Palm Beach, for appellants.
James A. Herb of Herb & Mednick, P.A., Boca Raton, for Appellee-Richard A. Popp, Stephanie L. Carman and Carol A. Licko of Hogan & Hartson, L.L.P., Miami, for Appellee-WPBT Communications Foundation, Inc.
Vanessa A. Reynolds of Conrad & Scherer, LLP, Fort Lauderdale for Appellee-Pittsburg State University Foundation, Inc.
TAYLOR, J.
Appellants, the son and grandchildren of the decedent, Virginia F. Davis, appeal a summary judgment which construed a trust instrument contrary to their interests and ruled against reformation of the trust. We reverse and remand because material issues of fact remain as to whether reformation is appropriate. Further, we offer guidance as to construction of the trust should the trial court determine on remand that reformation is not warranted.
The record shows that before the decedent created her March 4, 1986 irrevocable trust, she met jointly with the attorney who handled her estate planning, Robert A. Huth, Jr., and her financial advisor, John Ferrera. During that meeting, Huth explained that if one of her two sons died without issue, his interest in the trust would go to the surviving son. Huth claims to have a specific recollection of a conversation with Davis before she executed the trust, wherein they discussed this very point. Both men offered affidavits that it was Davis's intent that if one son died without issue, his share would pass to the survivor so as to "preserve her assets for her bloodline."
However, the trust was drafted by Huth, as follows:
7. Upon the death of the survivor of the Grantor and the Grantor's spouse, WILLIAM L. DAVIS, the remaining principal and undistributed income, of this trust shall be distributed equally to the Grantor's children, SCOTT F. DAVIS, and STEPHEN G. DAVIS, in the following manner:
(a) One-third as soon as is practicable after the death of the survivor of the Grantor and the Grantor's spouse;
(b) One-third five years after the distribution described in paragraph 7(a) above;

*611 (c) One-third five years after the distribution described in paragraph 7(b) above;
In the event either of the Grantor's children have died prior to a time that a distribution of any or all of their share of the Grantor's trust estate has been made to them, that share shall be distributed to the then living issue of said deceased child, in equal shares, share and share alike per stirpes ... (emphasis added).
The above trust language assumes that the sons will have issue and makes no provision for a son dying without issue. Attorney Huth concedes that this was a drafting error.
Virginia Davis died on November 2, 2000, her husband having predeceased her. Shortly thereafter, the first distributions of one-third of their shares was made to the two sons, Stephen and Scott. Scott Davis died on November 19, 2002, without issue, before the second distribution could be made. This created the question of who would receive the second two payments due in 2005 and 2010. Scott left his estate to charity, specifically to appellees, Pittsburg State University Foundation, Inc. and the WPBT Communications Foundation, Inc.
The trustee filed a declaratory action, asserting his doubt as to whether the remaining two installments should be paid to Scott's estate or to Scott's surviving brother, Stephen, or his children (if Stephen died before the payment date). Appellants, Stephen Davis and his children, filed an answer asserting that the trust should be construed in Stephen's favor, and affirmatively stating as a defense, "alternatively, to the extent the Court construes the Trust as written to provide that the Estate of Scott F. Davis receives the undistributed portion, the Trust should be reformed to reflect the true intent of the Grantor." In addition, appellants filed cross-petitions requesting, inter alia, the court to exercise its equitable authority to reform the Trust pursuant to Florida's common law and section 737.4031, Florida Statutes.
Appellees answered, asserting that the proper construction of the trust was to require distribution of the final two installments to Scott's estate and denying that the trust should be reformed. The parties filed cross-motions for summary judgment.
The trial court issued a written order entering summary judgment on behalf of Scott's estate. It found that the trust was not ambiguous, that Scott's interest was vested, and that there was no effective gift-over divesting his interest. The court rejected reformation, distinguishing our decision in In re Estate of Robinson, 720 So.2d 540 (Fla. 4th DCA 1998), because "the instant case involves an irrevocable, as opposed to revocable, Trust" and because there was no showing of mistake to support such a reformation.
Summary judgment is permitted only where there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The standard of review is thus de novo. Id.; Spears v. Albertson's, Inc., 848 So.2d 1176, 1177 (Fla. 1st DCA 2003).
In Robinson, a case of first impression in Florida, we held that a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake so long as reformation is not contrary to the interest of the settlor. 720 So.2d at 543.
The trial court attempted to distinguish Robinson on the ground that it involved a revocable trust, whereas the Davis trust was irrevocable. However, this distinction makes no difference. In *612 fact, as appellants point out, the Robinson trust was also irrevocable at the time of the reformation, given the death of the settlor. We further note that Robinson attached no significance to the fact that the case concerned a revocable trust.
The trial court's alternative ground for not following Robinson was that this case "does not contain the initial threshold showing of mistake required." Given the summary judgment record developed in this case, we disagree. Two witnesses, including the drafter of the trust, testified on deposition that a drafting mistake had been made. While the draftsman was somewhat equivocal as to whether what he had written conveyed the gift over to the surviving son in this case, he was very clear that if he did not convey it (clearly he did not, as the trial court found in the balance of its order), then that failure was an omission on his part as draftsman. Under Robinson, the draftsman's admission was more than sufficient to avoid summary judgment.[1]
The fifth district has adopted the reasoning and holding in Robinson. In Schroeder v. Gebhart, 825 So.2d 442, 445 (Fla. 5th DCA 2002), the court explained:
Allowing a court to reform an inter vivos trust after the death of the settlor is consistent with general equitable principles well-established in Florida and other states. It has long been held that equity will reform an agreement so as to conform to the intent of the parties, when an agreement, which due to a mistake of the drafter, violates or fails to carry out the intention of the parties. Relief is given where, through a mistake of the scrivener, the instrument contains an error or fails to properly define the terms agreed to by the parties.
Id.
Significantly, the fifth district did not mention whether the trust at issue in Schroeder was revocable or irrevocable at inception. Also significant is the testimony of the draftsman, quoted at length in Schroeder, which is very similar to the testimony of the draftsman in this case.
Appellees have suggested that because Robinson was not decided until after the trust was created, that this common law reformation authority does not apply. But, as Schroeder makes clear, Robinson simply applied long-standing common law principles of reformation. Moreover, the trust in Robinson was clearly written prior to that decision, too, yet that did not preclude its application there.
In their briefs, the parties have waged a pitched battle over whether appellants are estopped to deny that summary judgment is appropriate, given their cross-motion for summary judgment. The general rule is that a cross-motion for summary judgment does not estop a party from claiming that a genuine issue of material fact exists. See e.g, Floyd v. Homes Beautiful Constr., 710 So.2d 177, 179, n. 1 (Fla. 1st DCA 1998). The exception to this general rule does create an estoppel where the movant for summary judgment has taken a very specific position that there is no issue of fact as to a particular issue. Id.; see also Bruns v. Bruns, 682 So.2d 1159 (Fla. 4th DCA 1996). Appellants *613 have taken a consistent position that the facts overwhelmingly support their contention that a drafting mistake was made. Thus, any purported estoppel either does not exist or is immaterial to the position taken on this appeal.
We now turn to the question of how the trust language should be construed if, on remand, the trial court does not find reformation to be justified. In this case, the trial court ruled that the only reasonable construction was that Scott's interest vested on his mother's death and that the failure of the attempted gift over meant that his estate would be the beneficiary.
The interpretation of a written instrument presents a question of law which is reviewed de novo. See e.g., Limehouse v. Smith, 797 So.2d 15, 17 (Fla. 4th DCA 2001); Gilman Yacht Sales, Inc. v. FMB Invs., Inc., 766 So.2d 294 (Fla. 4th DCA 2000). Looked at literally, the trust language makes the entitlement to each installment contingent upon each son surviving to the date of distribution, which would mean that installments two and three were not vested at the time of Scott's death. See Travis v. Ashton, 156 Fla. 529, 23 So.2d 725, 726 (1945)("[I]f the element of futurity is annexed to the substance of the gift, rather than the enjoyment of it, vesting is suspended and the gift is contingent."); Story v. First Na'l Bank & Trust Co., 115 Fla. 436, 156 So. 101, 105 (1934)("[E]state is contingent if, in order for it to become a present estate, the fulfillment of some condition precedent other than the determination of the preceding freehold estates is necessary."); Sorrels v. McNally, 89 Fla. 457, 105 So. 106, 110 (1925)(stating that devise upon attaining certain age is prima facie contingent unless the income from the estate accrues to individual in the meantime). While the law does favor early vesting as a matter of presumption, it is the intent of the testator as expressed in the instrument which controls. See Story, 156 So. at 106-07; Sorrels, 105 So. at 110; In re Estate of Martin, 110 So.2d 421, 423 (Fla. 2d DCA 1959).
The problem here is that the contingent beneficiaries described in the trust instrument (i.e, Scott's issue) do not exist. Appellants claim that this creates an ambiguity, which can then be resolved in their favor by resort to extrinsic evidence of intent. In support of this position, appellants rely primarily on Wilson v. First Florida Bank, 498 So.2d 1289 (Fla. 2d DCA 1986). There, the testator had set up a fund to provide scholarships to a university, but had not designated the source of the funds. The court looked at this as an ambiguity, which it resolved by concluding that the testator had intended his residuary estate to fund the scholarships. Wilson is itself very close to a reformation case, but still seems far less of an "interpretative reach" than is being advocated by appellants in this point. Appellants essentially request that we make up out of whole cloth a gift-over provision, based solely on extrinsic evidence. Even with the aid of extrinsic evidence, this seems to go beyond what the court should be permitted to do in the guise of "construction."
Instead, we believe that, absent reformation, the controlling case law, which neither party has advanced, is as stated below:
If the designation of beneficiaries is deemed too indefinite for enforcement of the provisions of a trust, the usual result is that the trust is void and "the designated trustee holds the corpus under a resulting trust in favor of the estate of the settlor." ... Where it is compatible with the settlor's intent, it may be possible to sever the uncertain provision from *614 an accompanying enforceable one, "so that the remaining provision, and the trust as a whole, may be preserved."
McLemore v. McLemore, 675 So.2d 202, 205 (Fla. 1st DCA 1996)(citing Kunce v. Robinson, 469 So.2d 874, 877 (Fla. 3d DCA 1985)).
In Kunce, the court stated that the provision there, which permitted the trustee to make distributions to such "others as the Trustee in his discretion may deem appropriate," did not identify any particular entity, person or class which could enforce the trust. "It must therefore be deemed void for indefiniteness." 469 So.2d at 877. However, because the settlor's primary intent was apparently to benefit the other named beneficiaries, the court severed this provision rather than invalidate the trust altogether.
This seems the correct result in this case if reformation fails. Scott died without issue, so there is nobody to enforce the terms of that half of the trust. That gift should be held void and held by the trustee on a resulting trust for the settlor's estate. Of course, there is no reason to invalidate Stephen's half of the trust, which can be severed and enforced. We reiterate that this interpretation may be mooted should appellants establish their entitlement to reformation.
For the reasons stated above, we reverse the summary judgment and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
FARMER, C.J., concurs specially in result only.
SHAHOOD, J., concurs.
NOTES
[1] Appellee has argued that the deposition testimony of both witnesses was not properly considered because not filed more than 20 days before the summary judgment hearing. However, even assuming that the rule on the filing of affidavits prior to summary judgment hearings applies with equal force to depositions, the depositions here were served on May 20, 2003, a full 7 days prior to the May 27, 2003 summary judgment hearing (R. 575). Affidavits in opposition to summary judgment may be served by mail 5 days prior to the scheduled hearing. See Fla. R. Civ. Pro. 1.510(c). Thus, they are timely.