HAZOURI, J.
Richard A. Popp, as Personal Representative of the Estate of Scott F. Davis, Pittsburg State University, and WPBT Communications Foundation, Inc., appeal from a final judgment entered by the trial court reforming the Virginia F. Davis Irrevocable Trust dated March 4, 1986. We affirm.
The case involves the reformation of the Virginia F. Davis Trust, 1986 irrevocable trust, which provided that when Mrs. Davis died it would be divided in half with one share for each of her two sons and each son’s share would be distributed in three installments — one immediately, one five years later, and the last one five years after that.
In the pre-trial stipulation the stipulated facts were:
1. Virginia F. Davis executed the Virginia F. Davis Trust dated March 4, 1986.
2. Virginia F. Davis died on November 2, 2000.
8. Her husband, William L. Davis, predeceased her.
4. Virginia F. Davis had two children, Scott F. Davis and Stephen G. Davis. Scott F. Davis never had any children and died without issue on November 19, 2002. Stephen G. Davis has two adult children, Stephen G. Davis, Jr. and Beth-Ann [sic] Davis, both of whom are alive.
5. Scott F. Davis received the first installment under paragraph 7 of Article III of the March 4, 1986 Trust and died before the date of distribution of the second installment. The Will of Scott F. Davis named Richard A. Popp as personal representative and devises his Estate to Pittsburg State University Foun *956 dation, Inc. and WPBT Communications Foundation, Inc.
The 1986 trust, as a result of a drafting error, omitted instructions as to what would happen if one of the sons died without children before he had received his installment payments. The trust provisions expressly covered what would happen if a son died with children (providing that the unpaid installments would go to those children) but stopped without going to the next step, directing where the unpaid installments should go if a son had no issue. The relevant language from paragraph 7 of Article III of the 1986 Trust is:
Upon the death of the survivor of the Grantor and the Grantor’s spouse, WILLIAM L. DAVIS, the remaining principal and undistributed income, of this trust shall be distributed equally to the Grantor’s children, SCOTT F. DAVIS, and STEPHEN G. DAVIS, in the following manner:
(a) One-third as soon as is practicable after the death of the survivor of the Grantor and the Grantor’s spouse,
(b) One-third five years after the distribution described in paragraph 7(a) above;
(c) One-third five years after the distribution described in paragraph 7(b) above;
In the event either of the Grantor’s children have died prior to a time that a distribution of any or all of their share of the Grantor’s trust estate has been made to them, that share shall be distributed to the then living issue of said deceased child ...
Because of the trust draftsman’s failure to cover the distribution of the installments under the prevailing facts, the Trustee filed a declaratory judgment action. On cross motions for summary judgment, the trial court entered summary judgment for the Estate of Scott F. Davis and the charities who are the beneficiaries of his Estate. This Court reversed the summary judgment and remanded the case for further proceedings. See Davis v. Rex, 876 So.2d 609 (Fla. 4th DCA 2004). In that opinion, this court noted that the drafting lawyer had conceded that he had made a drafting error because the Trust language assumes that the sons will have children and makes no provision for a son dying without children. Id. at 611. In reversing the trial court, we held that triable issues existed as to whether the attorney who drafted the trust instrument committed a drafting error and whether reformation was appropriate. Id. at 612.
Upon remand, Popp filed an amended counterclaim for reformation in favor of the estate of Scott Davis. At the trial of this matter, received into evidence without objection was the March 4, 1986 trust, the 1992 amendment, the deposition of Robert Huth, the Virginia F. Davis Remainder Unitrust, Virginia’s Last Will and Testament, and Virginia’s revocable trust dated March 1, 1985 and amended on October 5, 1992.[1]
*957 The first testimony was Robert Huth’s deposition being read into the record. Huth prepared the March 4, 1986 trust. He reviewed his file. He prepared the trust in the form he understood Virginia Davis intended. When asked if he omitted any provision that she requested be included, he stated:
In light of this litigation that’s going on, I can’t answer that with yes or no answer. I would — I would say that it was Mrs. Davis’ intention to make a class gift of the assets in this trust to her children with the understanding that if any of her children were to predecease her, their share with [sic] would go to their issue. If there were no issues, it would go to the surviving child per stirpes or down the line to that side of the family of that issue. I believe that that was what I said in my dispositive provisions, but to the extent that I did not specifically delineate in more lay terms what would happen in the event of a child who died without issue, then to that extent I omitted that from the document.
Huth testified that when he interviewed Mrs. Davis, he determined from her that her intent was that “she wanted, as did her husband, the assets to pass to — to stay in the bloodline, to stay in the family and to go to the surviving child, and if none, to his issue.”
Huth also prepared the 1992 amendment to the revocable trust. It disposes of different property than that included in the 1986 trust. He met with Mrs. Davis to determine her intent and it had not changed. Mrs. Davis’s intent to have the assets go to the surviving child if the other child died without issue had not changed. Huth’s form that he used for trusts had changed at that point after getting his L.L.M. in estate planning.
Huth recalled a specific conversation with Mrs. Davis on this issue. She and her husband were present along with John Ferrera. Huth also testified that he had only ever had one client who did not want the share to go to the surviving child and he had to specifically spell it out in that agreement. That is contrary to what most people do. He would probably put that in his notes because it is a departure from the usual approach.
John Ferrera was then called to testify. He works for Raymond James & Associ-átes, an investment firm. He is an investment adviser and life insurance agent. The Davises were customers of his whom he met in 1984. He first helped them create a revocable living trust and referred them to Tom Price, a lawyer. He was there when they signed it in 1985. The family consisted of Mr. and Mrs. Davis, their two children, Scott and Steve, and two grandchildren, Steve, Jr. and Beth-Anne, Steve’s children. Scott was not married and did not have any children.
Ferrera then helped them create a life insurance irrevocable trust in 1986. Huth prepared it. They had several meetings. Ferrera was present when it was signed in Huth’s office. They reviewed the document and it was explained by Huth. The property was to be distributed upon Mrs. Davis’s death in installments, one-third upon her death, one-third five years later, and the last third at the end of ten years.
Huth further explained to the Davises that in case one of the children should pass *958 away, the property would go to the surviving child. The trust was then signed:
On cross examination, the following question was asked:
Q. Mr. Ferrera, with respect to Virginia, Virginia’s intent as to what would happen if there was a death of one of her children: Was that intent the same with respect to the 1985 document, the 1986 document, the 1992, restatement?
A. Definitely.
MR. HERB: No further questions..
THE WITNESS: She kept saying that she wanted everything in case of death of one of the children to go to the other one.
The trial court entered its Final Judgment in favor of reformation. The trial court found that the testimony of Huth and Ferrera established that there was a drafting error in the trust and that the trust did not specifically address the disposition of the second and third installments if Scott died without issue before the installment payments were due. The testimony was clear and convincing that Mrs. Davis intended the last two installments to be paid to Stephen or, if he was deceased, to his issue. In her other trust, she had consistently provided for her assets to be distributed to the .other son if one died without issue. The trial court reformed paragraph 7 of Article III of the 1986 trust to read:
“In the event either of the grantor’s children have died prior to a time that a distribution of any or all of their share of the grantor’s Trust Estate has been made to them, that share shall be distributed to the then living issue of said deceased child, in equal shares, share and share alike per stirpes and in the event that the deceased child shall die without issue, then to the deceased child’s brother.” (Emphasis added to reflect the reforming language.)
When this court previously decided Davis, we sent the case back to the trial court to determine if the trust should be reformed. We held, citing In re Estate of Robinson, 720 So.2d 540, 543 (Fla. 4th DCA 1998), “that a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake so long as reformation is not contrary to the interest of the settlor.” Davis, 876 So.2d at 611. This mistake must be shown by clear and convincing evidence. Robinson, 720 So.2d at 542.
The trial court found the testimony of Huth and Ferrera established by clear and convincing evidence that Virginia intended that the trust be distributed as provided with the actual but unwritten intent that if one of her children died, that portion of the trust left undistributed would go to her remaining child or his issue. We agree and therefore affirm the trial court’s reformation of the trust.

Affirmed.

GUNTHER and GROSS, JJ., concur.

. Virginia had two trusts, one revocable and one irrevocable. In the revocable trust, she provided for the distribution of the trust estate as follows:
(3) Distribution After Death of the Grantor and the Grantor's Spouse
a. Dispositive Provisions
Upon the death of the Grantor’s spouse, or upon the death of the Grantor if the Grantor is predeceased by the Grantor's spouse, the Trustee shall distribute the Credit Shelter Trust, together with the remaining principal of the Marital Trust, as follows:
[[Image here]]
4. The remainder (residue) of the entire distributable trust estate shall be distributed to the Grantor's children, SCOTT F. DAVIS and STEPHEN G. DAVIS, whether such children are living or deceased, in equal *957 shares, per stirpes. In the event a child of the Grantor should predecease the Grantor and the Grantor’s spouse and not be survived by living issue, said deceased child's share shall be distributed to the Grantor's other child, whether such child is living or deceased, per stirpes.