994 So.2d 1146 (2008)
Cecilia REID, as Trustee of the Edgar Sonder Trust, Appellant,
v.
TEMPLE JUDEA and Hebrew Union College Jewish Institute of Religion, Appellees.
No. 3D07-1367.
District Court of Appeal of Florida, Third District.
June 11, 2008.
Shutts & Bowen and William Jay Palmer, Miami, for appellant.
Bloom & Minsker and Kenneth Bloom; Arnaldo Velez, Coral Gables, for appellees.
Before WELLS, ROTHENBERG and SALTER, JJ.
WELLS, Judge.
Cecilia Reid, as trustee of the Edgar Sonder Trust, appeals from an order dismissing her petition to reform the trust for lack of standing. We reverse.
On May 17, 2000, Edgar Sonder executed a trust naming himself as trustee. By subsequent amendment, Cecilia Reid was *1147 named as sole successor trustee.[1] This trust, funded by assets "pouring over" from Sonder's estate, provided for a number of gifts following Sonder's death. Specifically, Article II, paragraph 1 of the trust as amended, titled "Pecuniary Gifts," provided for gifts totaling $31,000 to ten charities. Article II, paragraph 2 as amended, titled "Endowment Gift," provided that "[a]fter the gift listed in paragraph 1. directly above," $125,000 was to be paid to the Hebrew Union College Jewish Institute of Religion. Article II, paragraph 3 as amended, titled "Pecuniary Gifts to Individuals," provided that "[a]fter giving effect to the gifts in paragraphs 1. and 2. above," a number of specific gifts were to be made to enumerated individuals including a gift of $25,000 and the apartment in which Sonder then resided to Cecilia Reid:
After giving effect to the gifts in paragraphs 1. and 2. above, I hereby give and devise as follows:
a. Cecil[i]a Reid. I give to my nurse, CECIL[I]A REID, if she survives me, the sum of $25,000 and my apartment in which I currently reside, all the contents therein.[[2]]
On May 12, 2005, Sonder died. His will with codicils was admitted to probate, and Reid was appointed personal representative. Finding trust funds insufficient to pay all of the gifts provided for in trust Article II, paragraphs 1, 2, and 3, Reid moved to abate the enumerated pecuniary gifts proportionately. Reid also claimed that the apartment was a devise, not subject to abatement. The motion to abate was denied and affirmed by this Court in Reid v. Hebrew Union College-Jewish Institute of Religion, 947 So.2d 1178 (Fla. 3d DCA 2007).
Thereafter, Reid, as sole trustee, petitioned to reform the trust claiming that the trust instrument did not evidence the settlor's intent which was to give his apartment to Reid not subject to abatement:
As established by the Affidavit of William Jay Palmer [the attorney who prepared the trust and its two amendments]... Edgar Sonder intended to devise as a specific gift, not subject to any priorities, the apartment and its contents to his nurse, Cecilia Reid.
The Court's holding that the combination of the gift of the apartment and its contents with the pecuniary gift in subparagraph a. of Paragraph 3 of Article II of the Amended and Restated Trust Agreement converted the gift to a general gift subject to abatement to pay the other general gifts designated in priority to Paragraph 3 of Article II violates the intent of Edgar Sonder due to the error of the scrivener....
WHEREFORE, Petitioner requests this Court to reform the provisions of paragraph 3.a. of Article II ... to provide that the gift of the apartment and its contents to Cecilia Reid is segregated to qualify as a specific gift not subject to abatement for the payment of any other gifts....
Reid appended to her petition Sonder's handwritten instructions to attorney Palmer, which she maintained supported her position.
Hebrew Union College (the Article II, paragraph 2 beneficiary) and Temple Judea (an Article II, paragraph 1 beneficiary) moved to dismiss, claiming (1) that Reid, as trustee, lacked standing because she was "not an `interested person,' but merely a volunteer and stakeholder in the Trust without any personal stake in the outcome"; (2) that Reid owed a fiduciary duty of loyalty to all beneficiaries to act *1148 impartially; and (3) that construction of the trust distribution provisions had already been argued and affirmed on appeal. They also moved to disqualify Reid's attorney, William Palmer, pointing to the fact that it was Palmer who had prepared the trust and its amendments for Sonder. On April 18, 2007, the trial court adopted the beneficiaries' argument and dismissed the case "For Lack of Standing"; the court denied the motion to disqualify. We agree with Reid that the trial court erred in concluding that she lacked the standing to proceed and reverse that part of the trial court's order.[3]
The question posed is whether, acting solely in her capacity as trustee, Reid has standing to bring the instant action for reformation of the trust, based on her claim that a mistake had occurred and that the trust as written did not reflect Sonder's intent. Our review of applicable case law and statutory authority, both in effect at the time of the petition, as well as subsequently enacted, and incorporated under the terms of the trust itself, confirm Reid's standing to proceed.
It has long been held that equity will reform an agreement so as to conform to the intent of the parties, when an agreement, which due to a mistake of the drafter, violates or fails to carry out the intention of the parties. Relief is given where, through a mistake of the scrivener, the instrument contains an error or fails to properly define the terms agreed to by the parties.
Davis v. Rex, 876 So.2d 609, 612 (Fla. 4th DCA 2004) (quoting Schroeder v. Gebhart, 825 So.2d 442, 445 (Fla. 5th DCA 2002)).
Thus, in In re Estate of Robinson, 720 So.2d 540, 543 (Fla. 4th DCA 1998), the Fourth District Court of Appeal, in a case of first impression, held "that a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake so long as the reformation is not contrary to the interest of the settlor." See Schroeder, 825 So.2d at 445 (adopting the reasoning and holding of Robinson for the proposition that reformation of a trust after the death of the settlor will be allowed where consistent with general equitable principles); In re Estate of Huls, 732 So.2d 1206, 1207 (Fla. 2d DCA 1999) (citing Robinson for the proposition that a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake where reformation is not contrary to the settlor's interest).
A trustee is generally obligated to follow the settlor's true intent and purposes in discharging his/her duties in managing the trust. Although Robinson and its progeny had no occasion to, and did not, address whether a trustee could seek to reform a trust, we conclude that as "an indispensable party in all proceedings affecting the estate," In re Estate of Stisser, 932 So.2d 400, 402 (Fla. 2d DCA 2006) (quoting First Nat'l Bank of Hollywood v. Broward Nat'l Bank of Fort Lauderdale, 265 So.2d 377, 378 (Fla. 4th DCA 1972)), a trustee clearly has standing to seek reformation.
This conclusion is supported by portions of the Probate Code existing at the time Reid's claim was dismissed, as well as by more recent amendments. Florida law has long recognized a trustee's standing to seek modification of a trust instrument where the purposes of that trust, as written, have been, or cannot be, fulfilled; where complying with the terms of the *1149 trust will defeat or substantially impair carrying out a material purpose of the trust; or where the purpose for the trust no longer exits:
Judicial modification of trusts
(1) If the purposes of a trust have been fulfilled or have become illegal or impossible to fulfill or, if because of circumstances not known to or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of a material purpose of the trust or, if a material purpose of the trust no longer exists, upon the application of a trustee of the trust or any beneficiary a court at any time may modify the terms of a trust which is not then revocable to:
(a) Amend or change the terms of the trust, including terms governing distribution of the trust income or principal, or terms governing administration of the trust;
(b) Terminate the trust in whole or in part;
(c) Direct or permit the trustee to do acts that are not authorized or that are prohibited by the terms of the trust; or
(d) Prohibit the trustee from performing acts that are permitted or required by the terms of the trust.
....
(3) In exercising its discretion to order a modification of a trust under this section, the court shall consider the terms and purposes of the trust, the facts and circumstances surrounding the creation of the trust, and extrinsic evidence relevant to the proposed modification. § 737.4031(1), (3) Fla. Stat. (2006) (repealed by ch.2006-217, § 48, Laws of Fla.) (emphasis added);[4]see § 736.04113, Fla. Stat. (2007) (replacing former section 737.4031).[5]
We see little distinction between the authority conferred on a trustee by this provision to change or modify the terms of a trust on a claim that complying with the trust's terms will frustrate the settlor's purpose, and the authority needed to change or reform such a document so that *1150 its language accurately reflects what the settlor intended.
In fact, on July 1, 2007,[6] the Probate Code was amended to confer such authority:
Upon application of a settlor or any interested person, the court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intent if it is proved by clear and convincing evidence that both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement. In determining the settlor's original intent, the court may consider evidence relevant to the settlor's intent even though the evidence contradicts an apparent plain meaning of the trust instrument.
§ 736.0415, Fla. Stat. (2007) (added by Ch.2006-217, § 4, effective July 1, 2007) (emphasis added).
Although this provision does not expressly mention trustees, its legislative history confirms that it is intended to encompass trustees whose authority to seek reformation has always been presumed to exist:
Reformation of a trust to cure mistakes is addressed in s.736.0415, F.S. Upon application of the trustee or an interested person, a court may reform the trust's terms to conform to the settlor's intentions [if] clear and convincing evidence proves that both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake. Reformation under the section is available for mistakes of law and of fact, whether or not the terms of the trust are ambiguous. Florida case law supports reformation to cure scrivener's errors. [See In re Estate of Robinson, 720 So.2d 540 (Fla. 4th DCA 1998)] This section is broader, however, as it allows reformation for mistakes both in the expression and in the inducement.
Fla. S. Comm. On Banking & Ins., CS for SB 1170 (2006) Staff Analysis 20 (March 21, 2006) (emphasis added).[7]
To avoid this result, appellees maintain that "statutes in effect at the time of the petition" did not authorize the trustee's action. However, in addition to the analysis outlined above, the Edgar Sonder Trust expressly provides "the Trustee has the powers now or hereafter provided by law," *1151 and it is generally beyond dispute that the terms of a trust control. See Jones v. First Nat'l Bank in Fort Lauderdale, 226 So.2d 834, 835 (Fla. 4th DCA 1969) ("The duties, powers and liabilities of executors and trustees are ordinarily fixed by the terms of the will and trust agreement."). Thus, we reject the argument that present statutory provisions should be held inapplicable based on their effective date.
Rather, it is clear to us that in cases involving a determination of the settlor's true intent, a trustee is an "interested person," and an "interested person" has standing to seek reformation of a trust. For these reasons, we reject the general notion that a trustee lacks the standing to seek reformation of a trust either before or after enactment of section 736.0415. Accordingly, we reverse the order dismissing Reid's reformation action and remand for further proceedings on this claim.
NOTES
[1] Sonder executed amendments to the trust on June 6, 2003, and on April 28, 2005.
[2] The residue of Sonder's estate, by amendment, was also given to Reid.
[3] We asked the Real Property, Probate & Trust Law Section of The Florida Bar to file a brief as amicus addressing the question of a trustee's standing to pursue a claim for reformation. We thank the section for taking the time to respond and to provide us with its input.
[4] See generally Brian V. McAvoy, et al., Florida Practice: Estate Planning § 12:73 (2007-08 ed.), which addressing the judicial modification of trusts observes:

In 2000, Florida also added a law which permits judicial modification of trusts upon the application of a Trustee or any beneficiary: to amend or terminate a trust; or to prohibit a Trustee from doing what the trust agreement permits; or to permit a Trustee to do what the trust agreement prohibits. Under this statute, judicial modification is only available if the purposes of such trust have been fulfilled or become illegal or impossible to fulfill; or if, due to circumstances unknown to or unanticipated by the Settlor of such trust, compliance with the trust terms would defeat or substantially impair the accomplishment of a material purpose of the trust; or if a material purpose of the trust no longer exists. This judicial modification statute does not apply to trusts created after December 31, 2000, whose beneficial interests may vest or terminate no later than 21 years after the death of an individual then alive or within 90 years of its creation, if the trust instrument expressly prohibits judicial modification.
[5] Section 736.04113(1), Florida Statutes (2007), in pertinent part, provides:

(1) Upon the application of a trustee of the trust or an qualified beneficiary, a court at any time may modify the terms of a trust that is not then revocable in the manner provided in subsection (2), if:
(a) The purposes of the trust have been fulfilled or have become illegal, impossible, wasteful, or impractical to fulfill;
(b) Because of circumstances not anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of a material purpose of the trust; or
(c) A material purpose of the trust no longer exists.
(Emphasis added).
[6] In 2006, the Legislature repealed chapter 737, Florida Statutes (Trust Administration), and created the new chapter 736, Florida Statutes (Florida Trust Code), effective July 1, 2007. See Ch.2006-217, §§ 1-13, 48, 49, Laws of Fla; In re Amendments to the Fla. Probate Rules, 964 So.2d 140, 141 (Fla.2007).
[7] This staff analysis was based in substantial part on summaries provided by the Ad Hoc Trust Code Revision Committee. This Committee was comprised of members of various sections of the Florida Bar, including the Real Property, Probate & Trust Law, Elder Law, and Tax Law sections; liaisons to the Probate and Trust Litigation and the Probate Law Committees; and representatives from the Florida Bankers Association and the Florida Institute of Certified Public Accountants. Its May 21, 2006 summary stated:

3. Trust Reformation
....
b) Reformation to Correct Mistakes
Under section 736.0415, upon application of the trustee or any interested person, a court may reform the terms of a trust to conform to the settlor's intentions if it is proved by clear and convincing evidence that both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake. Reformation under the section is available for both mistakes of law and of fact, whether or not the terms of the trust are ambiguous.
Ad Hoc Trust Code Revision Committee, Florida Trust Code Scrivener's Summary, at 24 (May 21, 2006).