NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DENISE L. MEGIEL-ROLLO, )
Individually and as Trustee of the P.M. )
REVOCABLE TRUST dated July 29, )
1997, )
)
       Appellant, )
)
v. ) Case No. 2D14-4037
)
SHARON J. MEGIEL, ROBERT )
MICHAEL MEGIEL, DANIEL MEGIEL, )
and ANDREA MEGIEL, )
)
       Appellees. )
_____ )

Opinion filed April 17, 2015.

Appeal from the Circuit Court for Charlotte
County; Joseph G. Foster, Judge.

Douglas R. Bald of Fergeson, Skipper,
Shaw, Keyser, Baron & Tirabassi, P.A.,
Sarasota, for Appellant.

Will W. Sunter and Fletcher H. Rush of
Farr, Farr, Emerich, Hackett and Carr, P.A.,
Punta Gorda, for Appellee, Sharon Megiel.

Jeffery M. Backo of Mellor and Grissinger,
North Port, for Appellee, Robert Megiel.

No appearance for remaining Appellees.

WALLACE, Judge.

Denise Megiel-Rollo, individually and as Trustee of the P.M. Revocable

Trust dated July 29, 1997 (the Trust), appeals a final summary judgment determining

that the Trust is not subject to reformation under the provisions of section 736.0415,

Florida Statutes (2013), to add to it a contemplated schedule of beneficial interests that

the draftsman of the Trust had neglected to prepare and to incorporate into the trust

instrument when it was executed. Because section 736.0415 is a remedial statute that

authorizes the court to reform the terms of a trust to conform the terms to the settlor's

intent, we reverse the final summary judgment.

## I.  INTRODUCTION

Before her death, Margaret J. Megiel (the Decedent) owned a residence

located in Punta Gorda. The underlying basis of the parties' dispute is whether that

residence will be distributed under the terms of the Decedent's Last Will and Testament

or under the terms of the Trust. However, the primary issue that we are called upon to

determine in this case is whether the Decedent's Trust is subject to reformation to

correct an alleged drafting error.

## II.  THE FACTS

The Decedent had three children: Denise L. Megiel-Rollo, Sharon J.

Megiel, and Robert Michael Megiel.[1] The Decedent executed her Last Will and

---

[1]The parties in this case share the same surname. To avoid confusion, we will refer to them in this opinion by their first names.

We emphasize that there has not been an evidentiary hearing in this case. The facts stated in this opinion are drawn from the pleadings, the depositions on file, the affidavits, and other documents in the record. We review these facts in the light most favorable to the appellant as the party against whom summary judgment was entered. See Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002).

Testament on July 16, 1992. The Will does not include a specific bequest of the Punta Gorda residence. Notably, the Will provides for a gift of the residue of the Decedent's estate in equal shares to her three children, Denise, Sharon, and Robert.[2]

Approximately five years after she had executed her Will, the Decedent executed a document known as the "P.M. Revocable Trust," dated July 29, 1997.[3] The Decedent executed the Trust in Charlotte County, Florida. In general terms, the Trust was in form a typical revocable living trust of the type that are "widely used will-substitute devices that provide flexibility in managing the settlor's assets during his or her lifetime." Engelke v. Estate of Engelke, 921 So. 2d 693, 697 (Fla. 4th DCA 2006). The parties agree that the Decedent executed the Trust with the requisite formalities for the execution of a will. See § 737.111(1), Fla. Stat. (1997) (repealed 2007, 2008) (current version at § 736.0403(4), Fla. Stat. (2014)).

The Trust instrument referred to the Decedent as "Donor" and as "Trustee." The Decedent was designated as the initial Trustee of the Trust. The Trust named Denise as the successor Trustee. With an exception for periods during which the Decedent might be incapacitated, the Decedent reserved the right to amend or to revoke the Trust during her lifetime. Under the terms of the Trust, the Trustee was required to pay to Donor whatever part of the income and principal of the Trust that Donor might direct in writing. In the event of Donor's incapacity, the Trustee was

---

[2]The Will appears to be on deposit with the Clerk of the Circuit Court of Charlotte County. The record does not reflect that the Will has been admitted to probate or that a personal representative has been appointed for the estate of the Decedent.

[3]We are informed the Decedent was informally known as "Peggy" Megiel. Thus the initials in the Trust's name correspond to the Decedent's initials in the name by which she was usually known.

authorized to "use, apply, or expend for [D]onor's direct or indirect benefit, whatever part or parts or all of the income and principal, or both, of the trust fund the said Trustee shall think best."  If the Decedent transferred real property constituting her principal residence to the Trust, the Trustee was to hold the property for Donor's benefit and the Donor would retain an absolute possessory interest in the property and the right to occupy the property as her principal residence for the remainder of her life.  In fact, the Decedent executed a warranty deed transferring the Punta Gorda residence to herself as Trustee on the same day that she executed the Trust.  The warranty deed was promptly recorded in the public records of Charlotte County.

With regard to the issues raised in this appeal, the provisions of the Trust concerning the designation of the beneficiaries are of particular interest.  Article I of the Trust provides as follows:

> The term "Beneficiaries" wherever used herein shall mean the [B]eneficiary or [B]eneficiaries listed in the Schedule of Beneficial Interest[s] this day executed and filed with the Trustee or in the revised Schedule of Beneficial Interests, if any, from time to time executed and filed with the Trustee.

Furthermore, the Trust provides that it is to terminate upon the death of the Donor.  With regard to the distribution of the Trust assets upon the Donor's death, Article V of the Trust provides as follows:

> In the case of any termination of the Trust by the death of the Donor, the specific assets constituting the Trust Estate, subject to any encumbrances, shall be divided between the Beneficiaries as tenants in common in proportion to their respective interests as set forth in the [S]chedule of [B]eneficiaries.

> In the event any [B]eneficiary set forth in the [S]chedule of [B]eneficiaries shall be deceased upon the

- 4 -

termination of this Trust by the Death of the Donor, such beneficial interest shall be divided equally between the surviving [B]eneficiaries.

Unfortunately, the draftsman of the Trust neglected to prepare the schedule of beneficial interests referenced in Article I when the Decedent executed the trust instrument. When the Decedent died in August 2012, the omission to prepare the schedule of beneficial interests led directly to the current dispute among the parties concerning the ownership of the Punta Gorda residence that had been transferred to the Trust.

## III. THE PROCEDURAL HISTORY

The litigation began when Sharon filed a complaint against her siblings, Denise and Robert, seeking declaratory relief. In an amended complaint, Sharon sought a declaration that the Trust was void for lack of beneficiaries and that the Punta Gorda residence passed to the three siblings in accordance with the terms of the Will executed in 1992.[4]

Denise answered the amended complaint and filed a counterclaim seeking a judicial reformation of the Trust. In her counterclaim, Denise alleged, in pertinent part, as follows:

> 5. Article I of the Trust Agreement provides, "The term 'Beneficiaries' wherever used herein shall mean the [B]eneficiary or [B]eneficiaries listed in the Schedule of Beneficial Interest[s] this day executed and filed with the Trustee or in the revised Schedule of Beneficial Interest[s], if any, from time to time executed and filed with the Trustee."

> 6. Prior to the preparation of the Trust Agreement, Mrs. Megiel had instructed her attorney to draft the Trust

---

[4]For reasons that are not material to our disposition of this case, Sharon also named Robert's children, Daniel and Andrea, as defendants in the amended complaint.

Agreement to name Denise and Robert as the sole beneficiaries of the P.M. Revocable Trust.

7. Mrs. Megiel's attorney inadvertently failed to include in the Trust Agreement the Schedule of Beneficial Interest[s] naming Denise and Robert as sole beneficiaries.

8. At the time that Mrs. Megiel executed the Trust Agreement on July 29, 1997, she mistakenly believed that the Schedule of Beneficial Interest[s] naming Denise and Robert as sole beneficiaries was included in the Trust Agreement.

9. Pursuant to §736.0415, Fla. Stat., upon the application of any interested person, the court may reform the terms of a trust to conform to the settlor's intent where both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake of fact or law.

10. Mrs. Megiel's mistaken belief that the Schedule of Beneficial Interest[s] naming Denise and Robert as sole beneficiaries had been included in the Trust Agreement at the time of its execution constituted a unilateral mistake of fact which will preclude the accomplishment of Mrs. Megiel's intent unless the Trust Agreement is judicially reformed to include the Schedule of Beneficial Interest[s] naming Denise and Robert as sole beneficiaries.

Denise asked the circuit court to enter judgment reforming "the P.M. Revocable Trust Agreement dated July 29, 1977 to include the Schedule of Beneficial Interest[s] naming Denise L. Megiel-Rollo and Robert Michael Megiel as sole beneficiaries."

Ultimately, Sharon and Denise filed cross motions for summary judgment. In connection with these motions, Denise filed two affidavits—her own affidavit and the affidavit of her husband, Vincent P. Rollo. Sharon did not file any affidavits.

In her affidavit, Denise stated that before the Decedent executed the Trust, the Decedent had "informed [Denise] that she wanted only [Denise] and Robert to receive equal ownership of [the Punta Gorda residence] upon her death." Denise also

offered the Decedent's stated reason for not wanting Sharon to receive an ownership interest in the Punta Gorda residence.

Mr. Rollo is admitted to practice law in both Massachusetts and Florida. He prepared both the Trust and the warranty deed that transferred the Punta Gorda residence into the Decedent's name as Trustee. In his affidavit, Mr. Rollo stated, in pertinent part, as follows:

> 4. In July 1997, Mrs. Megiel requested Affiant to draw up legal documents whereby ownership of Mrs. Megiel's [Punta Gorda residence] would pass solely to Denise and Defendant, Robert Michael Megiel ("Robert"), upon her death. Mrs. Megiel was very emphatic in stating that she did not want Plaintiff, Sharon J. Megiel ("Sharon"), to receive any ownership interest in the House upon her death.

> 5. In compliance with Mrs. Megiel's request, Affiant drafted two documents for execution: (1) The P.M. Revocable Trust ("Trust Agreement") and (2) Warranty Deed.

> . . . .

> 7. The Schedule of Beneficial Interests referenced in Article I was intended by Mrs. Megiel to name Denise and Robert as sole residuary beneficiaries. However, due to an oversight of Affiant, the Schedule of Beneficial Interests was not prepared in order to be attached to the Trust Agreement when it was executed by Mrs. Megiel on July 29, 1997.

> 8. The Warranty Deed, which was also executed by Mrs. Megiel on July 29, 1997, transferred title to the House from Mrs. Megiel in her individual capacity to Mrs. Megiel in her capacity as Trustee of the P.M. Revocable Trust. The transfer of title to the House into the Trust was consistent with Mrs. Megiel's intent that upon her death Denise and Robert would receive ownership of the House as the sole residuary beneficiaries of the Trust.

## IV.  THE CIRCUIT COURT'S RULING

After a hearing, the circuit court entered an order determining the cross motions for summary judgment filed by Sharon and Denise.  The circuit court granted Sharon's motion for summary judgment; Denise's motion was denied.  In its order, the circuit court ruled as follows:

> 1.  The Court finds that the P.M. REVOCABLE TRUST was never created pursuant to Florida Statutes § 736.0402 as there were no definite beneficiaries to the purported Trust, and so the P.M. REVOCABLE TRUST is *void ab initio*.
>
> . . . .
>
> 3.  As no valid Trust was ever created, the P.M. REVOCABLE TRUST cannot now be reformed in accordance with Florida Statutes § 736.0415.
>
> 4.  The real property at issue was not properly titled in the P.M. REVOCABLE TRUST and shall be held in a resulting Trust for the estate of Ms. Megiel.

Subsequently, the circuit court entered a final summary judgment granting declaratory relief in accordance with its earlier order.  This appeal followed.

## V.  THE STANDARD OF REVIEW

The question that we are called upon to decide—considering the facts in the light most favorable to Denise—is whether the Trust is subject to reformation under section 736.0415 to correct an alleged drafting error.  This is a question of law that we review de novo.  See Davis v. Rex, 876 So. 2d 609, 611 (Fla. 4th DCA 2004).

# VI.  DISCUSSION

## A.  *The Statute.*

The parties agree that the controlling statute is section 736.0415, which addresses the subject of "Reformation to correct mistakes."  The statute provides as follows:

> Upon application of a settlor or any interested person, the court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intent if it is proved by clear and convincing evidence that both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.  In determining the settlor's original intent, the court may consider evidence relevant to the settlor's intent even though the evidence contradicts an apparent plain meaning of the trust instrument.

§ 736.0415.  Under the statute,

> [r]eformation is available for a mistake in the form of expression or articulation—an error that "arises when a donative document includes a term that misstates the donor's intention . . . , fails to include a term that was intended to be included . . . , or includes a term that was not intended to be included."

Morey v. Everbank, 93 So. 3d 482, 489 (Fla. 1st DCA 2012) (quoting Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 cmt. i (2003)).  As the designated successor trustee, Denise is an "interested person" with standing to seek reformation of the Trust.  Reid v. Temple Judea, 994 So. 2d 1146, 1151 (Fla. 3d DCA 2008).

Section 736.0415 was enacted by the legislature in 2006 as part of the new Florida Trust Code, chapter 736, Florida Statutes (the Code).  Ch. 2006-217, § 4, at 2342, Laws of Fla.  The legislation took effect on July 1, 2007.  Id. at § 49, at 2414.

The Code is Florida's version of the Uniform Trust Code (2000). Chapter 737 of the Florida Statutes concerning "Trust Administration," was repealed. Ch. 2006-217, § 48, at 2414, Laws of Fla.; see generally David F. Powell, The New Florida Trust Code, Part 1, 80 Fla. Bar J. 24 (July/Aug. 2006) (discussing the circumstances leading to the enactment of the Florida Trust Code and the Code's provisions); David F. Powell, The New Florida Trust Code, Part 2, 80 Fla. Bar J. 22 (Oct. 2006) (same); Laura Kristin Sundberg, Chapter 18, The Florida Trust Code, in Administration of Trusts in Florida (Fla. Bar CLE 8th ed. 2014) (discussing the enactment of the Florida Trust Code and the Code's provisions).

## B. Does the Trust Name Any Beneficiaries?

The circuit court ruled that the Trust was void ab initio and not subject to reformation because it did not name any beneficiaries. We disagree with the circuit court's ruling that the Trust did not name any beneficiaries. Granted, the draftsman of the Trust failed to prepare and incorporate into the Trust the Schedule of Beneficial Interests that was to designate the remainder beneficiaries who would take the Trust assets upon the death of the Decedent. Nevertheless, the Trust clearly designated the Decedent as a beneficiary of the Trust during her lifetime.

With regard to revocable trusts of the kind at issue here, the settlor is often the sole beneficiary of the trust during his or her lifetime. See, e.g., Fla. Nat'l Bank of Palm Beach Cnty. v. Genova, 460 So. 2d 895, 897 (Fla. 1984) (describing the settlor of a trust as "the sole beneficiary of the trust during her lifetime"); Brundage v. Bank of Am., 996 So. 2d 877, 882 (Fla. 4th DCA 2008) (describing the settlor of a revocable trust as the sole beneficiary of her own revocable trust until her death). The provisions

of the Trust under review here establish beyond any doubt that the Decedent was named as the Trust's sole beneficiary during her lifetime. The initial paragraph of the Trust designated the Decedent as both "Donor" and as "Trustee." Article III of the Trust provides, in pertinent part, as follows:

> The Trustee agrees with Donor that in the event Donor transfers real property occupied by Donor as Donor's principal residence, the Trustee will hold such real property for Donor's benefit and that Donor will retain an absolute present possessory right to occupy such property as Donor's principal residence so long as Donor shall live.

In fact, the Decedent did deed her principal residence to herself as trustee of the Trust on the same day that she executed the Trust instrument. Under the Trust, the Decedent had the "absolute present possessory right" to occupy that residence for the remainder of her life. Thus the Decedent had a beneficial interest in this asset of the Trust from the date of the execution of the Trust instrument until her death.

Furthermore, the Trust provided that the Donor would have the right during her lifetime "[f]rom time to time to withdraw from the operation of this Trust any part or all of the Trust property," thereby giving her another beneficial interest in the Trust. Finally, the Trustee was obligated under the provisions of the Trust to pay over to the Decedent or to her written order whatever parts of the income and principal of the Trust that she might direct in writing.

The Decedent had a beneficial interest in the Trust during her lifetime. Undeniably, the Decedent was a beneficiary of the Trust. The circuit court's ruling that the Trust did not name any beneficiaries is simply not supported by the plain language of the Trust document.

- 11 -

### C. The Question of Merger.

In an alternative argument, Sharon points out that the failure to incorporate the contemplated Schedule of Beneficial Interests into the Trust document resulted in the failure of the Trust to designate any remainder beneficiaries to take the assets of the Trust upon the death of the Decedent. Based on this omission, Sharon contends that upon the death of the Decedent, a resulting trust arose so that Denise, in her capacity as successor Trustee, held the Trust assets for the benefit of the Decedent's estate. In this alternative argument, Sharon concludes that the merger caused the Trust to terminate upon the death of the Decedent and the Trust was then not subject to reformation to supply the missing names of the remainder beneficiaries. Under this theory, the Trust assets would be distributed in accordance with the terms of the Decedent's Will.

Sharon's point that the failure of the Trust instrument to designate any remainder beneficiaries would ordinarily result in a merger is correct as far as it goes. "In order to sustain a trust entity, there must be a separation between the legal and equitable interests of the trust. If there is no separation of these interests, the doctrine of merger may apply and the trust be terminated." Contella v. Contella, 559 So. 2d 1217, 1218 (Fla. 5th DCA 1990) (citation omitted). "If the designation of beneficiaries is deemed too indefinite for enforcement of the provisions of a trust, the usual result is that the trust is void and 'the designated trustee holds the corpus under a resulting trust in favor of the estate of the settlor.' " McLemore v. McLemore, 675 So. 2d 202, 205 (Fla. 1st DCA 1996) (quoting Kunce v. Robinson, 469 So. 2d 874, 877 n.6 (Fla. 3d DCA 1985)). Based on these general principles, we agree with Sharon that—absent

reformation—the failure of the Trust to designate any remainder beneficiaries would have the result that upon the Decedent's death, then Denise, as successor trustee, would hold the Trust assets upon a resulting trust for the benefit of the Decedent's estate. See McLemore, 675 So. 2d at 205; Zimmerman v. Schuster, 145 N.E.2d 94, 99 (Ill. Ct. App. 1957).

Nevertheless, we disagree with Sharon's conclusion that the possibility of such a merger upon the death of the Decedent absent reformation necessarily means that reformation of the Trust to supply the missing names of the remainder beneficiaries is unavailable. Indeed, such precedent as exists on this issue in Florida is directly to the contrary. In a pre-Code case decided in 2004, the Fourth District held that the equitable remedy of reformation was available to avoid a resulting trust where the specified contingent beneficiaries for half of the trust's assets did not exist. Davis, 876 So. 2d at 614 ("We reiterate that [a resulting trust for the settlor's estate] may be mooted should appellants establish their entitlement to reformation.")[5] And, in a case decided before Massachusetts adopted its own version of the Uniform Trust Code, the Supreme Judicial Court of Massachusetts approved the reformation of a trust under circumstances somewhat similar to this case. See Dwyer v. Dwyer, 898 N.E.2d 504 (Mass. 2008) (approving the reformation of a trust to authorize the settlor to establish a schedule of beneficial interests for a trust after the settlor had transferred assets to the trust).

_____

[5]Although Sharon cites to the Davis decision in her brief, she does not address the Fourth District's pronouncement concerning the availability of reformation of a trust to avoid a merger.

- 13 -

We recognize that the Fourth District's decision in <u>Davis</u> predates the enactment of the Code and section 736.0415. Nevertheless, <u>Davis</u> constitutes persuasive authority that reformation is an available remedy under the Code in these circumstances. <u>See</u> § 736.0106 ("The common law of trusts and principles of equity supplement this code, except to the extent modified by this code or another law of this state.")

Sharon argues that "the concept of a 'mistake' which would warrant reformation [of a trust] is intended to address simple scrivener's errors that are contrary to the intent of the [settlor]." In other words, some errors in trusts are subject to correction by reformation, but others are not. According to Sharon, reformation is not available under section 736.0415 where, as in this case, the mistake amounts to a complete failure to designate any remainder beneficiaries that would result in a merger. We disagree. An examination of Florida trust law and section 736.0415 itself provide additional reasons to conclude that reformation of a trust is available to avoid what would otherwise result in a merger. We turn now to an examination of these reasons.

### D. Florida's Liberal Policy Regarding Reformation of Instruments.

The Florida courts have long followed a liberal policy with regard to reforming written instruments to conform them to the intentions of the parties. It is settled law in Florida that a court of equity has the inherent power "to order a written instrument reformed in such manner as to cause the instrument to reflect the true agreement of the parties when the terms of the agreement have not been clearly expressed in the instrument because of the mutual mistake or inadvertence." <u>Tri-Cnty. Prod. Distrs., Inc. v. Ne. Prod. Credit Ass'n</u>, 160 So. 2d 46, 49 (Fla. 1st DCA 1963); <u>see</u>

- 14 -

generally Thomas E. Baynes, Jr., More Than You Wanted to Know About the Doctrine of Reformation, 78 Fla. Bar J. 58 (Oct. 2004) (discussing the use of the remedy of reformation in Florida to correct mistakes in documents). The requisite standard of proof in actions for reformation is clear and convincing evidence. Allstate Ins. Co. v. Vanater, 297 So. 2d 293, 295 (Fla. 1974). "Rigorous application of the higher standard of proof in reformation cases promotes the policy that parties should not be subjected to contractual obligations to which they never agreed." USAA Cas. Ins. Co. v. Threadgill, 729 So. 2d 476, 478 (Fla. 4th DCA 1999) (citing Smith v. Royal Auto. Group, Inc., 675 So. 2d 144, 154 (Fla. 5th DCA 1996)).

In 1999, the Fourth District held, in what was a case of first impression in Florida, "that a trust with testamentary aspects may be reformed after the death of the settlor for a unilateral drafting mistake so long as the reformation is not contrary to the interest of the settlor." Robinson v. Robinson (In re Estate of Robinson), 720 So. 2d 540, 543 (Fla. 4th DCA 1998). After the decision in Robinson and before the enactment of the Code, two Florida appellate decisions recognized that reformation was available to correct a drafting error in a trust regarding the designation of beneficiaries. See Popp v. Rex, 910 So. 2d 954, 958 (Fla. 4th DCA 2005) (affirming an order that reformed a trust to clarify the settlor's intent that if one of the settlor's two sons died without issue before distribution of the trust assets was complete, the trust assets were to be distributed to the surviving son); Schroeder v. Gebhart, 825 So. 2d 442, 446 (Fla. 5th DCA 2002) (affirming a trial court order that reformed a trust in order to include as beneficiaries of the trust two of the settlor's grandchildren who had been excluded as the result of a drafting error). Thus the pre-Code case law does not support Sharon's

theory that reformation of trusts in Florida is limited to the correction of "simple scrivener's errors" or administrative matters and not to more substantive issues such as the designation of beneficiaries. In fact, the pre-Code case law supports the opposite conclusion.

### E. The Broad Scope of Section 736.0415.

We also find Sharon's argument unpersuasive because of the language of section 736.0415 itself. The statute provides that reformation of the terms of a trust is available "if it is proved by clear and convincing evidence that both the accomplishment of the settlor's intent and the terms of the trust were affected by <u>a mistake of fact or law</u>, whether in expression or inducement." (Emphasis added.) It is beyond argument that the statutory reference to "a mistake of fact or law" is not limited by any qualifiers. The broad scope of the language used in the statute is inconsistent with the notion that reformation is available to correct some mistakes in a trust, i.e., "simple scrivener's error," but not others. "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, . . . the statute must be given its plain and obvious meaning." <u>Holly v. Auld</u>, 450 So. 2d 217, 219 (Fla. 1984) (quoting <u>A.R. Douglass, Inc. v. McRainey</u>, 137 So. 157, 159 (Fla. 1931)). We must "give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature." <u>Green v. State</u>, 604 So. 2d 471, 473 (Fla. 1992) (citing <u>Se. Fisheries Ass'n v. Dep't of Natural Res.</u>, 453 So. 2d 1351 (Fla. 1984)). Giving the statutory language of section 736.0415 its plain and ordinary meaning compels the conclusion that the remedy of reformation of the Trust is available to correct the alleged drafting error resulting from the omission to prepare and incorporate

into the Trust the contemplated Schedule of Beneficial Interests.  The absence of any language of limitation in the statute—other than the requirement of proof by the heightened standard of clear and convincing evidence—is additional evidence that the legislature did not intend the construction of the statute for which Sharon contends.  For this court to read such a limitation into the statute would amount to judicial legislation of the sort in which we will not indulge.  See Tallahassee Mem'l Reg'l Med. Ctr. v. Kinsey, 655 So. 2d 1191, 1198 (Fla. 1st DCA 1995).

## F.  Section 736.0415 is a Remedial Statute.

Our conclusion finds additional support in the status of section 736.0415 as a remedial statute.  "A remedial statute is one which confers a remedy, and a remedy is the means employed in enforcing a right or in redressing an injury."  Grammer v. Roman, 174 So. 2d 443, 446 (Fla. 2d DCA 1965).  As a remedial statute, section 736.0415 "should be liberally construed in favor of granting access to the remedy provided by the Legislature."  The Golf Channel, Inc. v. Jenkins, 752 So. 2d 561, 565-66 (Fla. 2000).  "Courts should not interpret remedial statutes strictly or narrowly to thwart the intent of the Legislature."  E.A.R. v. State, 4 So. 3d 614, 629 (Fla. 2009).  The limiting construction that Sharon urges us to place on section 736.0415 is inconsistent with our duty to give this remedial statute a liberal rather than a narrow construction.

## G.  Considerations of Practicality.

Finally, we note that the construction that Sharon urges us to place on section 736.0415 is impractical and would prove to be incapable of judicial enforcement. Sharon does not explain how the courts might distinguish "simple scrivener's errors" that are subject to correction by reformation from the more complex and substantive

errors that are not. Under such a rule, when litigation arises, simplicity would inevitably be in the eye of the beholder. The courts would be unable to enforce such a vague and amorphous standard in a fair and consistent manner. Moreover, seemingly routine matters regarding a trust's administration may have a substantial impact on the interests of the beneficiaries and other interested parties. See, e.g., Morey v. Everbank, 93 So. 3d 482, 484-89 (Fla. 1st DCA 2012) (addressing the issue of whether the provisions of a trust were such as to waive the exemption from creditors' claims of two life insurance policies in the amount of $250,000 each). There is just no way to distinguish the simple and routine matter from the complex and unusual.

## VII. CONCLUSION

For the foregoing reasons, the circuit court erred in ruling that the Trust was not subject to reformation and in entering a summary judgment in favor of Sharon. The affidavit from the draftsman admitting error in the preparation of the Trust was sufficient to avoid summary judgment. See Davis, 876 So. 2d at 612. On remand, Denise must have an opportunity to prove her claim for reformation of the Trust. In accordance with section 736.0415, the standard of proof that she will be required to meet to establish her claim is clear and convincing evidence. See Reid v. Estate of Sonder, 63 So. 3d 7, 10 (Fla. 3d DCA 2011).

We reverse the order granting summary judgment and the final summary judgment, and we remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

NORTHCUTT and KELLY, JJ., Concur.